DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Kenneth Purdy, appeals the January 28, 2004 judgment of the Norwalk Municipal Court, which denied appellant's motion to suppress the results of the field sobriety tests, the breath test, and the observations and opinions of the arresting law enforcement officer.[1] The state intended to use the above as evidence of appellant operating a motor vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1) and (3).
 {¶ 2} These relevant facts were elicited at the January 9, 2004 suppression hearing. On December 6, 2003, at approximately 6:45 p.m., a civilian witness observed a brown or black, older model Chevrolet pick-up truck driving erratically eastbound on West Main Street in Norwalk, Huron County, Ohio. The witness telephoned the police and gave a description of the vehicle and its location.
 {¶ 3} Norwalk Police Officer, Ken Stiert, testified that he responded to the dispatch relating that a black-colored older Chevrolet pick-up truck, heading into town, was driving erratically. Stiert stated that he spotted the vehicle; it was weaving and went left of center several times. Stiert activated his overhead lights and siren and pulled over the vehicle.
 {¶ 4} Stiert told appellant that he observed him weaving the length of East Main Street; appellant stated that he had not been drinking. Stiert testified that he did not detect an odor of alcohol but did state that appellant's eyes were red and glassy and that appellant was speaking slowly and over-emphasizing his words. Stiert then had appellant perform the field sobriety tests including the horizontal gaze nystagmus test, the one-leg-stand, and the walk-and-turn test. Based on his performance of these tests, Stiert placed appellant under arrest and transported him to the Norwalk Police station.
 {¶ 5} At the police station, appellant agreed to take a breath alcohol content test. The results of the test showed that appellant was legally intoxicated. Appellant was issued a traffic citation and placed on administrative license suspension ("ALS").
 {¶ 6} Norwalk Police Officer, Kevin Schaffer, testified as to the procedures for maintenance of the BAC Datamaster machine. Schaffer testified that the machine used for appellant's breath test is calibrated weekly and the calibrations on December 1 and December 8, 2003, showed the machine to be working properly.
 {¶ 7} At the conclusion of the evidence, the trial court took the matter under advisement, and on January 28, 2004, the court denied appellant's motion to suppress as to the field sobriety test results, the observations of the officer, and the BAC Datamaster machine test results. On February 11, 2004, appellant was found guilty of driving under the influence of alcohol. This appeal followed.
 {¶ 8} On appeal, appellant raises the following six assignments of error:
 {¶ 9} "I. The court committed prejudicial error in finding probable cause to believe that appellant was operating a vehicle under the influence of alcohol.
 {¶ 10} "II. The court committed prejudicial error in not suppressing the results of the field sobriety tests in that the state failed to prove strict compliance with any standardized testing procedure.
 {¶ 11} "III. The court committed prejudicial error in finding that the field sobriety tests were administered in compliance with the Ohio Department of Health regulations.
 {¶ 12} "IV. The court committed prejudicial error in denying appellant's motion to suppress tests of appellant's alcohol level in that the state failed to prove that the individuals administering such test substantially complied with Ohio Department of Health regulations pursuant to the Ohio Administrative Code.
 {¶ 13} "V. The court committed prejudicial error in denying appellant's motion to suppress tests of appellant's alcohol level in that the state failed to prove that the individuals who calibrated the breath-testing instrument substantially complied with Ohio Department of Health regulations pursuant to the Ohio Administrative Code.
 {¶ 14} "VI. The court committed prejudicial error in denying appellant's appeal of the administrative license suspension."
 {¶ 15} For ease of discussion, the court will address appellant's first three assignments of error, which relate to the field sobriety tests, simultaneously. The law applicable to a motion to suppress is as follows. A motion to suppress must provide a prosecutor with notice of the basis for the challenge.Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph one of the syllabus. However, the basis need not be set forth with minute detail, only with sufficient particularity to put the prosecution on notice of the nature of the challenge. State v.Shindler (1994), 70 Ohio St.3d 54, 57-58. Once a defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. State v. Johnson (2000),137 Ohio App.3d 847,851, citing State v. Plummer (1986),22 Ohio St.3d 292,294.
 {¶ 16} When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488.
 {¶ 17} Appellant contends that at the suppression hearing, the state failed to demonstrate that Officer Stiert strictly complied with the National Highway Traffic Safety Administration ("NHTSA") guidelines for the administration of field sobriety tests. Appellant further argues that the trial court erroneously found that the field sobriety tests were conducted in compliance with the Ohio Department of Health ("ODH") regulations because, as to those tests, appellant's motion to suppress did not allege noncompliance with the regulations. Rather, appellant argued that the state failed to meet its burden under State v. Homan
(2000), 89 Ohio St.3d 421. Finally, absent the field sobriety test results, appellant asserts that Officer Stiert did not have probable cause to arrest appellant for driving under the influence of alcohol ("DUI").
 {¶ 18} In support of his contention that the state failed to show substantial compliance with the NHTSA guidelines, appellant relies on this court's case captioned State v. Nickelson (July 20, 2001), 6th Dist. No. H-00-036. In Nickelson, followingHoman, we concluded:
 {¶ 19} "While appellee introduced testimony of officers as to which tests were conducted and how they were conducted, it did not introduce any evidence to prove that the tests were conducted in a standardized manner as provided by the National Highway Traffic
 {¶ 20} Safety Administration. No witness testified as to these guidelines, and the manual itself was not admitted. Because appellee did not prove that the field sobriety tests were conducted in accordance with the manual, the results of the field sobriety tests should have been suppressed."
 {¶ 21} Following Homan's "strict compliance" requirement, the Ohio legislature amended R.C. 4511.19(D)(4), effective July 2003, as follows:
 {¶ 22} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section, of a municipal ordinance relating to operating a vehicle while under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse, or of a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test insubstantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 23} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 24} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 25} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate." (Emphasis added.)
 {¶ 26} The Supreme Court of Ohio has acknowledged that the amended statute permits field sobriety tests which have been conducted in substantial compliance with the testing standards to be admitted at trial. State v. Schmitt (2004),101 Ohio St.3d 79, ¶ 9. The court, construing Homan, concluded that even if the results of the tests are inadmissible, "[a] law enforcement officer may testify at trial regarding observations made during a defendant's performance of nonscientific standardized field sobriety tests." Id. at syllabus.
 {¶ 27} In the present case, the state failed to present testimony regarding the NHTSA guidelines for the sobriety tests performed. Officer Stiert testified only that the tests were conducted in accordance with his training; explanations of the tests consisted of recounting of how "we", i.e. the Norwalk Police Department, administer the tests. Further, likeNickelson, the state did not admit the NHTSA manual documenting the guidelines.
 {¶ 28} Based on the foregoing, we find that the results of the field sobriety tests should have been suppressed because the state failed to demonstrate the Officer Stiert substantially complied with the NHTSA guidelines when conducting the field sobriety tests. Though the test results may not be used at trial, pursuant to State v. Schmitt, supra, Officer Stiert's observations regarding appellant's test performance are admissible in determining whether Stiert had probable cause to arrest appellant.
 {¶ 29} Officer Stiert testified that he witnessed appellant go left of center several times. Appellant's eyes were glassy and red and his speech was slow and deliberate. Appellant exited his vehicle very slowly touching the vehicle several times as he went around the back. Regarding the field sobriety tests, Stiert stated that appellant could not keep his leg up for more than three out of thirty seconds and that during the walk-and-turn test appellant had trouble touching heel to toe and keeping his arms down. Based on these observations, we find that Officer Stiert had probable cause to arrest appellant for DUI.
 {¶ 30} As to appellant's third assignment of error complaining that the court erred when it determined that the field sobriety tests were administered in compliance with the ODH regulations, we find, based upon our determination of appellant's second assignment of error, that any alleged error is harmless and moot. Based on the foregoing, we find that appellant's first assignment of error is not well-taken, appellant's second assignment of error is well-taken, and appellant's third assignment of error is moot and not well-taken.
 {¶ 31} Appellant's fourth and fifth assignments of error concern the administration of the breath alcohol test and will be addressed concurrently. In his fourth and fifth assignments of error, appellant contends that the trial court erroneously failed to suppress the results of the breath alcohol test because: 1) the state failed to demonstrate that Officer Stiert substantially complied with the ODH regulations when administering the test and 2) the state failed to show substantial compliance with the regulations regarding the calibration of the BAC Datamaster machine. The state counters each assignment of error by arguing that appellant failed to support his contention with the specific factual allegations required in a motion to suppress.
 {¶ 32} Crim.R. 47 provides that a motion to suppress "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit."
 {¶ 33} Interpreting Crim.R. 47, in State v. Shindler,70 Ohio St.3d 54, the Supreme Court of Ohio stated that a motion to suppress which was virtually identical to a sample motion to suppress was sufficient enough to raise issues regarding compliance with alcohol testing to warrant a hearing. Id. at 57. This court has interpreted Shindler as not establishing "blanket approval" of any motion using form language. State v.Wiley (Dec. 23, 1999), 6th Dist. No. L-98-1212. Rather, we concluded that Shindler "stands for the proposition that a motion using the form language that is accompanied by a memorandum containing factual information to support the allegations is sufficient to require a trial court to hold a hearing on the issues raised." Id.
 {¶ 34} Appellant's January 5, 2004 motion to suppress alleges, in relevant part:
 {¶ 35} "4. The individual administering Defendant's test of alcohol did not conduct the test in accordance with the time limitation and regulations of the State of Ohio in R.C.4511.19(D) and the Ohio Department of Health governing such testing and analysis as set forth in 3701-53-02 of the Ohio Administrative Code, including the operator's checklist instructions issued by the Ohio Department of Health included in the appendices to OAC 3701-53-02.
 {¶ 36} "5. The breath-testing instrument was not properly checked to determine radio frequency interference as required by OAC 3701-53-04(A)(2).[2]
 {¶ 37} "6. The machine or instrument analyzing Defendant's alcohol level was not in proper working order and not calibrated in accordance within the time and manner required by OAC 3701-53-04.
 {¶ 38} "7. The solution used to calibrate the testing instrument was invalid and not properly maintained in accordance with OAC 3701-53-04(A)(1) and (C).
 {¶ 39} "8. The operator was not licensed to operate the instrument analyzing Defendant's alcohol level in accordance with OAC 3701-53-07. The person or persons calibrating the instrument analyzing Defendant's alcohol level were not currently licensed in accordance with OAC 3701-53-07."
 {¶ 40} Appellant also filed a memorandum in support of his motion to suppress; however, the memorandum failed to include any factual allegations as to the breath alcohol test.[3]
 {¶ 41} We find that the allegations set forth in appellant's motion to suppress are sufficient under Crim.R. 47. While not advocating "blanket approval" of motions using form language, we conclude that in this case, the state was adequately informed of the issues to be decided. This is so, in large part, because the issue of the sufficiency of the motion to suppress was never raised by the state during the trial court proceedings.
 {¶ 42} We must now determine whether the state met its burden to show substantial compliance with the ODH regulations regarding breath alcohol testing. Substantial compliance is not literal compliance. "Substantial compliance is sufficient when the procedures employed are likely to achieve the same result as that specified in the rule." State v. Herrig (Apr. 16, 1999), 6th Dist. No. WD-98-047, citing State v. Rains (Jan. 29, 1999), 6th Dist. No. F-98-016.
 {¶ 43} At the January 9, 2004 suppression hearing Officer Stiert testified that after taking appellant to the police station he observed appellant for 20 minutes before administering the breath alcohol test. Appellant's first attempt resulted in an invalid sample. Officer Stiert observed appellant for a second 20 minute interval and took another breath sample which indicated that appellant was legally intoxicated. Stiert testified that he is certified to operate the BAC Datamaster machine.
 {¶ 44} Officer Kevin Schaffer testified that he is the senior operator of the BAC Datamaster machine; he conducts the weekly calibrations. Schaffer testified that he maintains records of the calibrations as well as maintenance and repair records. Schaffer testified that he was initially certified by the Department of Health, must be recertified yearly, and is certified as a senior operator.
 {¶ 45} Schaffer testified at length as to the calibrations done prior to and following appellant's breath test and the test printouts were admitted into evidence. Schaffer testified regarding the radio frequency interference component of the instrument check. The evidence admitted also showed the expiration date of the instrument check solution as well as the date of its first use and date to discard. The instrument checks were within the accepted range.
 {¶ 46} Upon review of the evidence presented at the suppression hearing, we find that the state demonstrated substantial compliance, i.e., that the breath alcohol test and the instrument checks were conducted by qualified individuals and in accordance with the
 {¶ 47} ODH regulations. Accordingly, appellant's fourth and fifth assignments of error are not well-taken and denied.
 {¶ 48} Appellant's sixth and final assignment of error challenges the denial of appellant's ALS appeal. Appellant raises arguments addressed in Assignments of Error Nos. I. through V. Based on our disposition of the foregoing, we find that appellant's sixth assignment of error is not well-taken and denied.
 {¶ 49} On consideration whereof, we find that appellant was prevented from having a fair trial, and the decision of the Norwalk Municipal Court is reversed as to appellant's second assignment of error and affirmed in all other respects. This case is remanded to the Norwalk Municipal Court to determine whether enough evidence exists absent the field sobriety test results to find appellant guilty of driving under the influence of alcohol in violation of R.C. 4511.19. Pursuant to App.R. 24, appellee is required to pay the court costs of this appeal.
Judgment affirmed in part and reversed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J., Concur.
[1] Appellant also requested, and the court granted, the suppression of appellant's post-arrest statements.
[2] O.A.C. 3701-53-04 provides:
"A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist for the instrument being used. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
"(1) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced.
"(2) An instrument shall be checked using an instrument check solution containing ethyl alcohol approved by the director of health. An instrument check result is valid when the result of the instrument check is at or within five one-thousandths (0.005) grams per two hundred ten liters of the target value for that instrument check solution. An instrument check result which is outside the range specified in this paragraph shall be confirmed by the senior operator using another bottle of approved instrument check solution. If this instrument check result is also out of range, the instrument shall not be used until the instrument is serviced.
"(B) An instrument check shall be made in accordance with paragraph (A) of this rule when a new evidential breath testing instrument is placed in service or when the instrument is returned after service or repairs, before the instrument is used to test subjects.
"(C) An instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first. After first use, instrument check solutions shall be kept under refrigeration when not being used. The instrument check solution container shall be retained for reference until the instrument check solution is discarded.
"(D) Each testing day, the analytical techniques used in rule 3701-53-03 of the Administrative Code shall be checked for proper calibration under the general direction of the designated laboratory director. General direction does not mean that the designated laboratory director must be physically present during the performance of the calibration check.
"(E) Results of instrument checks, calibration checks and records of service and repairs shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code."
[3] On January 23, 2004, after the suppression hearing, appellant filed a supplemental brief in support of his motion to suppress.