JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Sharon Mace, appeals from the judgment of the Lyndhurst Municipal Court denying her motion to suppress the results of field sobriety tests and a blood alcohol level test.
 {¶ 2} At the suppression hearing, Gates Mills police officer Randy Savage testified that as he was stopped at a red light at approximately 9:25 p.m. on June 13, 2003, he observed a small, gray car traveling in the opposite direction stop at the light, but then make a prohibited right turn on red. When the light turned green, Savage turned and followed the car.
 {¶ 3} Savage testified that, as he followed the car, he saw it weaving within its lane. He also observed that the car was making sudden stops and was "jerking from left to right," hitting the curb at least once. Savage followed the car to the bottom of a hill, where he effectuated a traffic stop.
 {¶ 4} Savage testified that he approached the passenger side of the car and informed the driver, later identified as appellant, of the reason for the stop. According to Savage, appellant told him that she did not see the "No Turn on Red" sign at the intersection where she had turned, and she was weaving because she was listening to a baseball game on her radio. Appellant told Savage that she was coming from the "Cleveland Country Club," and admitted that she had drunk two glasses of wine. During this conversation, Savage noticed that appellant's speech was "slurred[ed], mush-mouth[ed], [and] thick tongue[ed]," so he moved to the driver's side door of the car, where he could smell a moderate odor of alcohol coming from appellant. He also observed that her eyes were red and glassy.
 {¶ 5} Savage testified that he then asked appellant to perform several tests, including counting backwards from 66 to 33, reciting the alphabet, and performing a finger dexterity test. According to Savage, appellant successfully recited the alphabet, but failed the finger dexterity and counting tests, so he asked her to exit her vehicle to perform other sobriety tests.
 {¶ 6} According to Savage, as appellant was exiting her vehicle, appellant told him that she had a genetic defect in her right leg. Later, she told him that her right leg was smaller than her left leg, but then stated that it was larger than her left leg. Savage testified that he did not observe any defect, and, further, that neither of appellant's shoes had a raised heel to compensate for a difference in height.
 {¶ 7} Savage then administered the walk and turn, one-leg stand, and horizontal gaze nystagmus tests to appellant. According to Savage, appellant did not walk heel to toe, stepped off the line, and made an improper turn when she attempted the walk and turn test, and swayed and put her foot down several times during the one-leg stand test. Savage testified that he discontinued the horizontal gaze nystagmus test because, contrary to instruction, appellant kept moving her head while he tried to administer the test. In light of his observations, Savage placed appellant under arrest. At the police station, another officer administered a blood alcohol level test to appellant, the results of which indicated that her blood alcohol level was in excess of the legal limit.
 {¶ 8} After the trial court denied her motion to suppress, appellant pled no contest to charges of operating a motor vehicle under the influence of alcohol ("OMVI"), operating a motor vehicle with a prohibited breath alcohol level ("BAC"), making a prohibited right turn on red, and weaving, in violation of Gates Mills Cod. Ord. 334.01(A)(1), 334.01(A)(3), 306.07 and 332.39(A), respectively. The trial court merged the BAC offense with the OMVI offense and found appellant guilty of driving under the influence of alcohol, making a prohibited right turn on red, and weaving. The court sentenced her to 30 days in jail, with 27 days suspended upon completion of a driver's intervention program, and a $550 fine, plus costs.
 {¶ 9} Appellant now challenges the trial court's denial of her motion to suppress.
 {¶ 10} In her first three assignments of error, appellant challenges the constitutionality of R.C. 4511.19(D)(4)(b), regarding the admissibility of the results of sobriety field tests.
 {¶ 11} Prior to the enactment of R.C. 4511.19(D)(4)(b), the Ohio Supreme Court held in State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212, paragraph one of the syllabus, that in order for the results of field sobriety tests to serve as evidence of probable cause to arrest, such tests must be performed in strict compliance with the procedures promulgated by the National Highway Traffic Safety Administration (NHSTA). Subsequent to Homan's "strict compliance" requirement, the Ohio General Assembly enacted R.C. 4511.19(D)(4)(b) as part of Amended Substitute Senate Bill 163, effective April 9, 2003. The statute provides, in pertinent part, as follows:
 {¶ 12} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards of any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 13} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 14} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution or juvenile court proceeding.
 {¶ 15} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 16} The Ohio Supreme Court has acknowledged that pursuant to this statute, "the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Instead, an officer now may testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 9.
 {¶ 17} In her first three assignments of error, appellant contends that in enacting R.C. 4511.19(D)(4)(b), the Ohio General Assembly violated the separation of powers doctrine set forth in Section 5(B), Article IV of the Ohio Constitution.[1] Specifically, appellant asserts that by enacting R.C. 4511.19((D)(4)(b), the government's legislative branch altered the Ohio Rules of Evidence, which are the exclusive domain of the Ohio Supreme Court, representing the judicial branch. The thrust of appellant's argument is that in Homan, the Ohio Supreme Court applied and interpreted Evid.R. 702 to create a standard for the admissibility of field sobriety tests and, therefore, it is beyond the General Assembly's power to change this standard by statute.
 {¶ 18} At the onset, we note that appellant did not raise the issue of the constitutionality of R.C. 4511.19((D)(4)(b) in the trial court. The "failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, at the syllabus. We retain the discretion, of course, to consider a waived constitutional argument under a plain error analysis or where the rights and interests involved may warrant it. In re M.D. (1988),38 Ohio St.3d 149, 151.
 {¶ 19} No such analysis is necessary here, however. Ohio law abounds with precedent applying the long-standing principle that courts should avoid reaching constitutional issues if they can decide the case on other grounds. See, e.g., In re Miller (1992), 63 Ohio St.3d 99, 110; HallChina Co. v. Public Util. Comm. (1977), 50 Ohio St.2d 206, 210; State exrel. Hofstetter v. Kronk (1969), 20 Ohio St.2d 117, 119 (constitutional questions are not to be decided unless "absolutely necessary"); PayphoneAssoc. v. Cleveland (2001), 146 Ohio App.3d 319, 331. Here, because appellant's fourth assignment of error is dispositive, we need not reach the constitutional question.
 {¶ 20} In her fourth assignment of error, appellant contends that, even assuming R.C. 4511.19(D)(4)(b) is constitutional, the trial court erred in denying her motion to suppress because the field sobriety tests were not administered in substantial compliance with NHTSA standards. Without the results of the field tests, appellant contends, there was no probable cause to arrest her.
 {¶ 21} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." Statev. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8-9. (Internal citations omitted.)
 {¶ 22} Important to our review of this assignment of error is the allocation of burdens at a hearing on a motion to suppress. The Ohio Supreme Court has held that to suppress evidence obtained pursuant to a warrantless search or seizure, defendants must initially demonstrate that the search or seizure was warrantless and state the grounds on which they challenge the search or seizure with enough particularity to put the State on notice of the basis for the challenge. Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph one of the syllabus. Once a defendant has made this initial showing, the burden of proof (including the burden of going forward with the evidence) rests with the prosecutor to show the validity of the search or seizure. Id. at paragraph two of the syllabus.
 {¶ 23} In this case, appellant's motion to suppress stated grounds with sufficient particularity: she outlined the facts surrounding the stop and arrest, and then specifically asserted that the field sobriety tests were not administered in accordance with NHTSA guidelines and that the requisite "clues" to indicate intoxication, as specified by NHTSA, were not present. In short, appellant's motion and memorandum were sufficient to shift the burden to the City to demonstrate that the field sobriety tests were conducted properly. The City did not carry its burden, however.
 {¶ 24} Our review of the record indicates that the City failed to present any evidence whatsoever to demonstrate that the field sobriety tests were conducted in either substantial or strict compliance with NHTSA standards. No witness testified as to these guidelines, and the City did not introduce the NHTSA manual regarding the tests. Although the transcript of the suppression hearing indicates that, at one point, the trial judge referred to her own copy of the NHTSA manual, the manual was not admitted into evidence.
 {¶ 25} At the suppression hearing, Officer Savage testified that he has been trained in administering the walk and turn, one-leg stand and horizontal gaze nystagmus tests. He testified further that he demonstrated the walk and turn and one-leg stand tests for appellant and that he discontinued the horizontal nystagmus test without completing it because appellant repeatedly moved her head during the test. Savage gave no testimony, however, regarding what the NHTSA standards are for administering the tests; he testified only regarding how he administered the tests and that he did so in accordance with his training. Although on cross-examination Savage insisted that he gave appellant all of the instructions required by NHTSA, he did not identify what those instructions are.
 {¶ 26} In short, although the City introduced evidence as to which tests were conducted and how they were conducted, it did not introduce any evidence to prove that the tests were conducted in compliance with the NHTSA guidelines for the tests. Because the City did not do so, the results of the field sobriety tests should have been suppressed.
 {¶ 27} Nevertheless, "the totality of facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded * * *." State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212. Accordingly, we must determine whether Officer Savage had probable cause to arrest appellant absent the tests. We conclude that he did.
 {¶ 28} Here, there was competent, credible evidence from Officer Savage that he observed behavior consistent with intoxication. Savage testified that he observed appellant make a prohibited right turn on red, and then, as he followed her, saw her car weaving within its lane, making sudden stops and jerking from left to right, and hitting the curb on one occasion. When Savage stopped appellant, he observed that her eyes were red and glassy, her speech was slurred and thick and there was an odor of alcohol about her. He testified that her responses to his questions were also inconsistent: she first reported that she was coming from the "Cleveland Country Club," then later stated that she was coming from the Cleveland Clinic; she told Savage that she had not had much to drink, then stated she had two glasses of wine; and at one point, she told him that her right leg was shorter than her left leg, but then stated that it was longer than her left leg.
 {¶ 29} In light of this testimony, we conclude that the totality of the facts and circumstances, without reference to the field sobriety tests, supports a finding of probable cause to arrest appellant for driving while intoxicated. See, e.g., State v. Hall, Cuyahoga App. No. 82959, 2004-Ohio-3872; State v. Purdy, Huron Cty. App. No. H-04-008,2004-Ohio-7069; State v. Nickelson (July 20, 2001), Huron Cty. App. No. H-00-036, and cases cited therein. Although the trial court erroneously failed to suppress the results of the field sobriety tests, there was ample evidence to support the arrest and conviction, and such error, in this matter, was harmless.
 {¶ 30} Assignments of error one, two, three and four are therefore overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and Kilbane, J., concur.
[1] Section 5(B), Article IV of the Ohio Constitution grants authority to the Ohio Supreme Court to "prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." It also details the procedure for the making of such rules. The Supreme Court is required to file proposed rules by January 15 of each year and those proposed rules take effect on July 1 unless the General Assembly adopts a concurrent resolution of disapproval. After a rule is adopted, "all laws in conflict with such rules shall be of no further force or effect * * *."