OPINION
{¶ 1} This case is before us on the appeal of Deborah Wells from a felony conviction of driving under the influence of alcohol while having three prior convictions under R.C. 4511.19(A) or R.C. 4511.19(B) within six years of the current offense. After the trial court overruled Wells' motion to suppress, Wells pled no contest and was found guilty of the felony charge. Wells was then sentenced to various sanctions, including a term of intensive probation supervision with a chemical abuse/mental health counselor, sixty days in jail, and a three-year drivers' license suspension. The jail sentence and license suspension were stayed pending appeal. In support of the appeal, Wells raises the following assignments of error:
 {¶ 2} "I. The trial court erred by failing to suppress evidence as the scope of the original traffic stop exceeded its scope and the officer lacked the requisite reasonable suspicion necessary to request Ms. Wells to exit her vehicle to conduct field sobriety testing.
 {¶ 3} "II. The trial court erred as the totality of the circumstances failed to objectively establish probable cause to arrest Ms. Wells for driving under the influence and such arrest violated the Appellant's constitutional rights.
 {¶ 4} "III. OFC. Stamm failed to inform Ms. Wells of her constitutional rights against self-incrimination, as defined by Miranda,
after effectuating an arrest, and all statements elicited from her following her arrest must be suppressed."
 {¶ 5} After considering the record, including the videotape of the traffic stop and arrest, we find the assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 {¶ 6} "I {¶ 7} In deciding motions to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses."State v. Retherford (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498
(citation omitted). Consequently, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.
 {¶ 8} When the trial court in this case decided the motion to suppress, it adopted the testimony, in whole, of Officer Jason Stamm. Stamm is the individual who made the original traffic stop and conducted sobriety tests. As we mentioned, the first assignment of error challenges Officer Stamm's grounds for requiring Wells to leave her vehicle for field sobriety testing.
 {¶ 9} The propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, at paragraph one of the syllabus. We have said on numerous occasions that these decisions are very fact-intensive. See, e.g., State v. Criswell, Montgomery App. No. 20952,2005-Ohio-3876, at ¶ 8. To justify a particular intrusion,
 {¶ 10} "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" Terry v. Ohio (1968), 392 U.S. 1, 21-22,88 S.Ct. 1868, 1880, 20 L. Ed.2d 889.
 {¶ 11} As a preliminary point, we note that the police did not have to have reasonable suspicion of criminal activity before Wells could be asked to exit her car. The United States Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Pennsylvania v. Mimms (1977),434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L. Ed.2d 331. Accord State v.Evans, 67 Ohio St.3d 405, 408, 1993-Ohio-186, 618 N.E.2d 162 (noting thatMimms dispenses of the requirement that an officer must have reasonable suspicion of criminal activity before ordering a driver out of an already lawfully stopped vehicle).
 {¶ 12} As we mentioned, Stamm was the arresting officer. He was also the only witness who testified at the suppression hearing. Stamm indicated that he was on duty with the Centerville, Ohio, Police Department on June 17, 2004. At around 1:00 a.m., Stamm saw a car traveling southbound on South Main Street, without illuminated headlights or taillights. At that time of night, it is quite dark, and cars must have their lights on. Due to this obvious infraction of motor vehicle laws, Stamm initiated a lawful stop.
 {¶ 13} Stamm was behind the car for about 300 yards before he stopped it. During that time, he did not see any other traffic violations. When Stamm walked up to the car, Wells had her hands on the steering wheel, was looking straight ahead, and could not produce any identification. Wells was alone in the car, and Stamm could smell the odor of alcohol. At first, Wells would not look at Stamm, but when Wells finally made eye contact, Stamm could see that her eyes were "glossy" and her pupils were dilated. Stamm said he had previously encountered people who were intoxicated, and Wells exhibited the same signs. Wells eventually told Stamm her name, and said that she had consumed four or five drinks. She also said she had been at McDigger's Pub. While Wells was still seated, Stamm administered a quick horizontal gaze nystagmus (HGN) test to get a baseline identification of Wells' eyes.
 {¶ 14} After making the above observations, Stamm walked back to his cruiser and requested another unit because he was going to do field sobriety testing. When Stamm entered Wells' social security number into the computer, he found out that she was driving under suspension. Wells had five total suspensions, including three twelve point suspensions, a "habitual alcoholic" suspension, and a current DUI or OBI suspension.
 {¶ 15} Shortly thereafter, another officer arrived, and Stamm asked Wells to get out of her car. The videotape taken at the scene shows Wells stumbling and holding onto the back of the car to maintain balance. Stamm administered six field sobriety tests and then arrested Wells for driving a motor vehicle while under the influence of alcohol.
 {¶ 16} Based on the totality of the circumstances, Stamm had reasonable suspicion that Wells was under the influence of alcohol. As we mentioned, Stamm lawfully stopped Wells due to the fact that she was operating her car without lights late at night. Once the vehicle was stopped, Wells did not need reasonable suspicion of criminal activity before ordering Wells out of the car. However, the fact is that Stamm did have reasonable suspicion, based on Wells' appearance, the odor of alcohol, and Wells' admission that she had consumed four or five drinks and had just left a bar.
 {¶ 17} Wells contends that Officer Stamm did not have reasonable suspicion as outlined in our prior decisions in State v. Dixon (Dec. 1, 2000), Greene App. No. 2000-CA-30, 2000 WL 1760664, and State v.Spillers (Mar. 24, 2000), Darke App. No. 1504, 2000 WL 299550. We disagree.
 {¶ 18} In Spillers, the facts known to the officer included de minimis lane violations, followed by a significant interval of time in which the defendant drove home without any further violations. The officer also detected a "slight" odor of alcohol and the defendant admitted he had consumed a couple of beers. 2000 WL 2999550, at *2. We stressed that the issue was close, but concluded that:
 {¶ 19} "traffic violations of a de minimis nature are not sufficient, combined with a slight odor of an alcoholic beverage, and an admission to having consumed `couple' of beers, to support a reasonable and articulable suspicion of Driving Under the Influence. Few of us drive any appreciable distance without committing traffic violations that could properly be characterized as `de minimis.' By themselves, then, traffic violations of a de minimis nature are not indicative of impaired driving. Otherwise, virtually every motorist could reasonably be suspected of impaired driving, since virtually every motorist, driving a distance of several miles, will fail to signal a lane change; touch, or even slightly cross, a line marking a lane; or exceed the speed limit slightly. Furthermore, a slight odor of an alcoholic beverage, without more, is not indicative of impaired driving. The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage." Id.
 {¶ 20} We reached the same result in Dixon, on very similar facts.Dixon involved a window tint violation. The defendant also had an odor of alcohol, had glassy, bloodshot eyes, and admitted having consumed one or two beers. Id. In this regard, we stated that:
 {¶ 21} "[t]he mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had had one or two beers. Perhaps one day it will be illegal to drink and drive. That is not the present state of the law, however." 2000 WL 1760664, at *2.
 {¶ 22} In the present case, Wells admitted having four or five drinks — which is significantly more than one or two drinks. Officer Stamm also indicated that Wells exhibited signs he had previously seen in persons who were intoxicated. Furthermore, by the time Stamm administered field sobriety tests, he was aware of Wells' history of alcohol-related suspensions. These facts are more than sufficient to distinguish this case from Spillers and Dixon. We must stress that officers do not need probable cause in order to conduct sobriety tests. Instead, they must simply have "reasonable suspicion of criminal activity, supported by specific and articulable facts." State v. Durrum (Sept. 2, 1995), Montgomery App. NO. 14901, 1995 WL 558808, *3, citing Columbus v.Anderson (1991), 74 Ohio App.3d 768, 770, 600 N.E.2d 712. Because Officer Stamm had a reasonable suspicion that Wells was driving under the influence of alcohol, the trial court did not err in overruling the motion to suppress.
 {¶ 23} Based on the preceding discussion, the first assignment of error is without merit and is overruled.
 {¶ 24} "II {¶ 25} In the second assignment of error, Wells contends that the totality of the circumstances failed to conclusively establish probable cause for her arrest, and that the arrest violated her constitutional rights. Wells' primary claim in this regard is that Officer Stamm failed to perform the sobriety tests in substantial compliance with National Highway Traffic Safety Administration (NHTSA) requirements.
 {¶ 26} In State v. Homan, 89 Ohio St.3d 421, 2002-Ohio-212,732 N.E.2d 952, the Ohio Supreme Court said that in deciding if probable cause exists for a DUI arrest, it would consider "whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." 89 Ohio St.3d at 427. The court also noted that the decision would be based on the "`totality' of facts and circumstances surrounding the arrest." Id.
 {¶ 27} In Homan, the court further observed that where sobriety tests are excluded for lack of strict compliance (the standard at the time), the totality of the circumstances could still support a finding of probable cause to arrest. Id. Notably, the field sobriety tests in Homan
were not performed in strict compliance with NHTSA. Despite this fact, the Ohio Supreme Court found probable cause for the arrest. Evidence supporting the arrest included the trooper's observation of the defendant's red and glassy eyes, the smell of alcohol on the defendant's breath, the defendant's admission that she had been consuming alcoholic beverages, and the nature of the traffic violation. Id.
 {¶ 28} After Homan, the General Assembly amended R.C. 4511.19 to provide that strict compliance with testing standards is not required. The new standard under the amended statute is one of "substantial compliance." State v. Schmitt, 101 Ohio St.3d 79, 82, 2004-Ohio-37,801 N.E.2d 446, at ¶ 9.
 {¶ 29} In the present case, six field sobriety tests were conducted. Two of these (the HGN and "walk and turn") were NHTSA tests. The other four (the alphabet recitation, "finger to nose," balance, and finger dexterity tests) were required by the local police department. Wells challenges the administration of the NHTSA tests as lacking in substantial compliance with prevailing standards.
 {¶ 30} Under amended R.C. 4511.19(D)(4)(b), the State may introduce the results of field sobriety tests if:
 {¶ 31} "a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration * * *."
 {¶ 32} Officer Stamm testified that he was certified to perform the NHTSA tests, but he did not say that he conducted the tests in compliance with the standards. Stamm also did not testify about NHTSA guidelines for the tests. And finally, the State did not submit a NHTSA manual containing the guidelines. In similar situations, courts have held that the results of the field sobriety tests should be suppressed. See Statev. Purdy, Huron App. No. H-04-008, 2004-Ohio-7069, at ¶ 27, and Villageof Gates Mills v. Mace, Cuyahoga App. No. 84826, 2005-Ohio-2191, at ¶ 24-26. We have previously held that a court may take judicial notice of the NHTSA standards that govern the administration of field sobriety tests, either upon request, or on the court's own motion, after giving appropriate notice of its intent to the parties. State v. Stritch,
Montgomery App. No. 20759, 2005-Ohio-1376, at ¶ 16-21. However, in the present case, there was no request for judicial notice, nor did the court even mention the manual in its decision.
 {¶ 33} Based on the lack of evidence indicating that the HGN and walk-and-turn tests were administered in substantial compliance with NHTSA guidelines, we find that the trial court would have erred if it had considered the test results in finding probable cause. However, this error was harmless for two reasons. First, the trial court did not say in its decision that suppression was contingent on the test results. Instead, the court simply adopted Stamm's testimony and overruled the motion to suppress.
 {¶ 34} Assuming for the sake of argument that the trial court relied on the test results, the second reason the error is harmless is that Officer Stamm had probable cause independent of the standardized tests. See State v. Staten, Athens App. No. 03CA1, 2003-Ohio-4592, at ¶ 36.Staten involved a no contest plea following denial of a motion to suppress. The Fourth District Court of Appeals held that the trial court erred in considering standardized sobriety tests. However, the Fourth District also found that the error was harmless because the officer had probable cause independent of the standardized tests.
 {¶ 35} Likewise, Mace involved a no contest plea following denial of a motion to suppress. In Mace, the Eighth District Court of Appeals held that the trial court should have suppressed the results of field sobriety tests, but concluded that the error was harmless. The Eighth District reasoned that the totality of circumstances, without reference to the challenged field sobriety tests, supported a finding of probable cause to arrest the defendant for driving while intoxicated. 2005-Ohio-2191, at ¶ 27-28.
 {¶ 36} Of similar effect is State v. Nixon, Montgomery App. No. 19030, 2002-Ohio-2702, 2002 WL 1150833, *4, which involved a no contest plea following denial of a suppression motion. In Nixon, we held that the trial court erred in commenting on the standard to be applied to officer conduct. We found the error harmless because the evidence supported a finding of probable cause. Likewise, in State v. Davis (Dec. 8, 2000), Clark App. No. 2000-CA-16, 2000 WL 1803626, *1, we concluded that the trial court erred in refusing to suppress vehicles that were illegally seized because they were not specified in a warrant. Again, we found the error harmless because the officers had observed the vehicles legally and would have been able to testify to their observations in court. Accord,State v. Kulyk, Guernsey App. No. 01CA13, 2002-Ohio-1591, 2002 WL 491849, *5 (after the defendant's motion to suppress was denied, the defendant pled no contest to having a weapon under disability. The Fifth District Court of Appeals held that the trial court should have suppressed the handgun, because its discovery did not fit within an exception to the warrant requirement. Nonetheless, the Fifth District found the error harmless because the other evidence presented at the suppression hearing was sufficient to support the conviction).
 {¶ 37} As in the cited cases, any error in this case was harmless because the trial court was able to rely on Officer Stamm's observations about Wells' test performance. Purdy, 2004-Ohio-7069, at ¶ 27, andMace, 2005-Ohio-2191, at ¶ 27-28. See, also, State v. Faul, Montgomery App. No. 20578, 2004-Ohio-6225, at ¶ 26 (holding that an officer may testify about lay observations even if testing standards have not been observed).
 {¶ 38} In Schmitt, the Ohio Supreme Court explained that an officer's observations of non-scientific sobriety tests are important because:
 {¶ 39} "`performance of the psychomotor tests involves observations that parallel those that a layperson would make in assessing an individual's sobriety. Thus, a defendant's ability to perform such simple tasks is within the juror's common understanding.'
 {¶ 40} "The nonscientific field sobriety tests involve simple exercises, such as walking heel-to-toe in a straight line (walk-and-turn test). The manner in which defendant performs these tests may easily reveal to the average layperson whether the individual is intoxicated. We see no reason to treat an officer's testimony regarding the defendant's performance on a nonscientific field sobriety test any differently from his testimony addressing other indicia of intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol. In all of these cases, the officer is testifying about his perceptions of the witness, and such testimony helps resolve the issue of whether the defendant was driving while intoxicated.
 {¶ 41} "Unlike the actual test results, which may be tainted, the officer's testimony is based upon his or her firsthand observation of the defendant's conduct and appearance." 2004-Ohio-37 at ¶ 13-15.
 {¶ 42} During his testimony, Stamm related various indicia that supported his decision to arrest Wells for driving under the influence of alcohol. These include: the odor of alcohol; the glossy and dilated appearance of Wells' eyes; the fact that Wells initially would not make eye contact; the lateness of the hour and the fact that Wells was driving without headlights; Wells' admission that she had four or five drinks and had been at a bar; Wells' driving record, which included a current DUI suspension and a habitual alcoholic designation; the fact that Wells stumbled when she left the car and had to hold onto the car for balance; the fact that Wells again lost her balance during the walk and turn test and had to hold onto the car a second time; and the fact that Wells was not coordinated while performing other tests and swayed when she should have been able to stand still. We have viewed the videotape and the suppression testimony, and find that Stamm's observations are supported by the record.
 {¶ 43} Accordingly, while the trial court should have disregarded the results of the HGN and "walk and turn" tests, any error was harmless. The trial court correctly found probable cause for the arrest.
 {¶ 44} We should also stress that the issue of probable cause is essentially irrelevant, since very little evidence was uncovered post-arrest. See State v. Hoskins, Darke App. No. 1544, 2001-Ohio-1632, 2001 WL 1245078, *3-5 (noting that the issue of probable cause for an arrest is irrelevant where the officer's observations and the sobriety tests occurred pre-arrest). Wells refused to take a breathalyzer test at the police station, and the only pertinent comment that Wells made post-arrest is one referenced in the State's brief, i.e., Wells allegedly said she had been following someone who was "more drunk" than she was. We did not hear this statement when listening to the videotape, but there was quite a bit of background noise. In addition, Wells mumbled at times. Officer Stamm did testify at the suppression hearing that Wells made such a remark while sitting in the back of his cruiser.
 {¶ 45} In Hoskins, we compared liminal motions with suppression motions. We pointed out that liminal motions are a better way to challenge pre-arrest conduct, because they ask for evidentiary rulings, not for application of the exclusionary rule in its customary form. Id. at *4. Through liminal motions, what a defendant can raise, before and during trial, is the weight to be given the tests, due to defects in administration. Id. The defendant can also argue, "as an evidentiary matter, that the evidence was insufficient to support a conviction because he passed the sobriety tests." Id.
 {¶ 46} We are aware that the defense in this case contends that an "arrest" or custodial situation occurred when Officer Stamm decided that Wells was going to be detained for driving under suspension. However, as we will explain later, that claim is incorrect. No arrest took place until Officer Stamm placed handcuffs on Wells, after the field sobriety tests were done. Consequently, even if we found a lack of probable cause for the arrest, it would only be relevant to matters occurring post-arrest.
 {¶ 47} Having concluded that no reversible error occurred, we will overrule the second assignment of error.
 {¶ 48} "III {¶ 49} In the third assignment of error, Wells claims that all statements she made after her arrest should have been suppressed because Officer Stamm failed to give her Miranda warnings until after she arrived at the jail. Wells contends that she should have been given Miranda
warnings when she was asked to leave her vehicle, because she was not free to leave and was "in custody" for driving under suspension. Wells also claims that she should have received Miranda warnings when she was arrested and was placed in the police cruiser.
 {¶ 50} Until suspects are "in custody," they do not have a right to warnings under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L. Ed.2d 694. See, e.g., State v. Frady (2001), 142 Ohio App.3d 776,780, 757 N.E.2d 12. Custodial interrogation is "`questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"State v. Roberts (1987), 32 Ohio St.3d 225, 226, n. 1, 513 N.E.2d 720, citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602,16 L. Ed.2d 694. An arrest exists where there is:
 {¶ 51} "`(1) an intent to arrest; (2) under real or assumed authority; (3) accompanied by an actual or constructive seizure of the person; and, (4) which is so understood by the person arrested.'" * * * `A seizure is an arrest . . . if a "reasonable person" in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associated with formal arrest.'" State v. Pyle, Greene App. No. 2003 CA 35, 2003-Ohio-6664, at ¶ 14 (citation omitted).
 {¶ 52} After applying these standards, we do not agree that Wells was in custody before she was handcuffed. In the first place, Wells' incriminating statements about drinking and having been at a bar were made when Officer Stamm first walked up to the car, and were in response to routine questioning for a traffic stop. The United States Supreme Court has indicated that "persons temporarily detained pursuant to * * * [ordinary traffic] stops are not `in custody' for purposes of Miranda."Berkemer v. McCarty (1984), 468 U.S. 420, 440, 104 S.Ct. 3138,82 L. Ed.2d 317. There is no evidence that a reasonable person in Wells' position would have felt restrained at that point.
 {¶ 53} After Stamm walked back to his cruiser, he found out that Wells was driving under suspension. Stamm did testify that he had probable cause to arrest Wells for driving under suspension at that point, and that Wells was not free to leave after he found out about her driving record. However, Stamm did not communicate these facts to Wells. In a similar situation, the United States Supreme Court rejected the need forMiranda warnings.
 {¶ 54} Specifically, in McCarty, a trooper had decided to take the defendant into custody and to charge him with a traffic offense as soon as the defendant stepped out of his car. The trooper did not tell the defendant this, and arrested him only after conducting sobriety tests.468 U.S. at 423 and 442. The Supreme Court found that the defendant was not entitled to Miranda warnings because he was not in custody when sobriety tests were conducted. In this regard, the court commented that:
 {¶ 55} "[a]lthough Trooper Williams apparently decided as soon as respondent stepped out of his car that respondent would be taken into custody and charged with a traffic offense, Williams never communicated his intention to respondent. A policeman's unarticulated plan has no bearing on the question whether a suspect was `in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 442.
 {¶ 56} Accordingly, Wells was not entitled to Miranda warnings before the sobriety tests were conducted. We also find no violation of constitutional rights in the failure to give warnings before Wells arrived at the jail. Officer Stamm did not interrogate Wells while she sat in the back of the police cruiser, but was simply filing out paperwork. During this time, Wells made various voluntary statements and also interrupted Stamm repeatedly, to ask if she could be taken home, instead of to the jail. Even after Stamm explained that this would not be possible, Wells continued to request that Stamm take her home.
 {¶ 57} As we mentioned earlier, we did not really hear any statements that would be considered incriminatory when we reviewed the videotape. However, even if any of the statements (like the comment Wells apparently made about another driver being "more drunk") could be construed as incriminatory, they were clearly voluntary and were not in response to questioning by Officer Stamm. "A defendant's voluntary, unprovoked statements to police while riding in a cruiser en route to jail do not fall within the protection of Miranda, even though the defendant has been placed under arrest." State v. Barrett, Butler App. No. CA2003-10-261, at ¶ 34. Accordingly, the third assignment of error is without merit and is overruled.
 {¶ 58} Based on the preceding discussion, the first, second, and third assignments of error are overruled, and the judgment of the trial court is affirmed.
Wolff, J., and Grady, J., concur.