{¶ 12} I am in agreement with the majority that there was no error in placing appellant in the police car or in refusing to let him out of the police car (despite his requests) during the period of the initial detention and investigation. I likewise concur that the standard for administration of the field sobriety tests is "substantial compliance" under R.C. 4511.19, rather than "strict compliance," as articulated in State v. Homan (2000),89 Ohio St.3d 421. I diverge from the majority, however, who find that there was substantial compliance with the NHTSA guidelines for administering the field sobriety tests.
 {¶ 13} Important to the analysis of this alleged error is a consideration of the burden of proof on a motion to suppress. InXenia v. Wallace (1988), 37 Ohio St.3d 216, the Ohio Supreme Court held that to suppress evidence obtained as a result of a warrantless search or seizure, the defendant must state the grounds upon which he challenges the search with sufficient particularity to put the State (here, the City) on notice of the basis of the challenge. Once the defendant has made this initial showing, the burden of proof and the burden of going forward rests with the prosecution.
 {¶ 14} In this case, appellant's motion to suppress stated grounds with sufficient particularity to notify the City that the defense would claim that the field sobriety tests were not administered in accordance with NHTSA guidelines. Upon that showing, the burden shifted to the City.
 {¶ 15} My review of the record indicates that the City failed to present any evidence whatsoever to demonstrate that the field sobriety tests were conducted in either substantial or strict compliance with NHTSA standards. No witness testified as to these guidelines, the City did not introduce the NHTSA manual regarding the tests, nor did any expert testify as to the standards. In short, there is no evidence in this record by which this court might evaluate whether there was "strict," "substantial," or "no" compliance with the NHTSA standards. Village of Gates Mills v.Mace, Cuyahoga App. No. 84826, 2005-Ohio-2191.
 {¶ 16} The original requirement of "strict compliance" articulated in Homan, supra, was born of a concern that deviation from the standardized testing procedures directly impacts the validity of the test results; i.e., if the test is not administered as specified, the results from the test might well be untrustworthy.
 {¶ 17} When the legislature passed R.C. 4511.19 in response to Homan, requiring substantial compliance with the NHTSA standards rather than strict compliance, it was clearly not the purpose of the legislature to establish a "close-enough-for-government-work" standard, but, rather, to reduce the possibility that a slavish adherence to the minutae of the protocol might discredit the results of an otherwise clearly valid test. My concern with the opinion of the majority is that there is no evidence whatsoever in the record as to the NHTSA standards, such that an appellate panel might evaluate the nature of the compliance with the protocol.
 {¶ 18} Accordingly, the City did not sustain its burden and the results of the field sobriety tests should be suppressed.
 {¶ 19} That being said, the remaining inquiry is whether the other factors before the court were sufficient to constitute probable cause, which they were. The officer testified that the appellant had bloodshot eyes and a slight odor of alcohol not immediately detected by him because of the strong smell of cologne, was driving at an excessive speed, and, most importantly, refused to take a portable breathalyzer test.[1] All of these observations of the officer are admissible facts under Evid.R. 401 and 402, and the inferences that may be drawn from them are more than sufficient for a trier of fact to conclude that the officer had adequate probable cause.Columbus v. Dials, Franklin App. No. 04AP-1099, 2006-Ohio-227;Westerville, supra.
[1] "Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated. Thus, if he is not intoxicated, such a test will provide evidence for him; but if he is intoxicated, the test will provide evidence against him. Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt * * *." Westerville v.Cunningham (1968), 15 Ohio St.2d 121, 122.