[Cite as *State v. Cevera*, 2013-Ohio-5483.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0053** |
| ROBERT W. CEVERA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula Municipal Court, Case No. 09 TRC 04539.

Judgment: Affirmed.

*Michael Franklin*, Ashtabula City Solicitor, and *Lori B. Lamer,* Assistant Ashtabula City Solicitor, Ashtabula Municipal Court, 110 West 44th Street, Ashtabula, OH 44004 (For Plaintiff-Appellee).

*William P. Bobulsky,* William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Robert W. Cevera, appeals from the judgment of the Ashtabula Municipal Court, sentencing him for operating a vehicle under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a), and driving a vehicle left of center, a violation of R.C. 4511.30. At issue is whether the trial court erred in denying appellant's motion to suppress the results of field sobriety tests administered by the arresting officer. We hold there was no error and affirm the trial court's judgment.

{¶2}   During the early hours of November 1, 2009, Sgt. Robert S. Slocum, a veteran officer with the Ashtabula County Sheriff's Department, was patrolling southbound on State Rte. 45 in Saybrook Township, Ohio.  Traffic was light.  At 2:22 a.m., Sgt. Slocum noticed the pickup truck in front of him had passed over the center line, then weaved slowly back into its proper lane, before crossing the fog line on the right of the road.  Sgt. Slocum observed the pickup repeat this three or four times before stopping the vehicle.

{¶3}   Upon approaching the truck, the officer noticed the driver, appellant, had red, watering eyes and the smell of alcoholic beverage emanated from the vehicle.  Sgt. Slocum asked appellant to exit his truck to perform field sobriety tests.  Appellant was unsteady exiting the truck and seemed to use his arms to maintain his balance.

{¶4}   Sgt. Slocum first administered the horizontal gaze nystagmus ("HGN") test.  He testified at the suppression hearing that appellant exhibited all six "clues" indicating inebriation under the test.  The sergeant testified that, at this point, he believed appellant was impaired.  The officer, however, proceeded to administer the one-leg-stand test, which requires the subject to stand on one leg, while raising the other for a brief period, all while keeping his or her arms at their side.  Sgt. Slocum testified that appellant could not keep his foot up for the requisite period, or keep his arms at his sides.  Finally, the officer asked appellant to perform the walk-and-turn test, which requires the subject to walk a straight line, heel to toe, ten steps; turn; then walk back again ten steps in the same fashion.  Sgt. Slocum testified appellant only walked out nine steps; and, again, he needed to use his arms to maintain balance.  Sgt. Slocum

2

testified there were no "clues" associated with the one-leg-stand test or the walk-and-turn test.

{¶5}   Sgt. Slocum placed appellant under arrest, and transported him to the State Highway Patrol station in Saybrook.   There, appellant agreed to perform a breathalyzer test, which he failed.

{¶6}   On November 4, 2009, appellant entered a written plea of not guilty to charges of OVI and driving left of center.  Appellant thereafter moved to suppress the evidence against him.  After a hearing on the motion to suppress, the trial court granted the motion regarding the exclusion of the breathalyzer results, finding the state failed to prove the test was administered within the time period required by law.  It denied the motion relative to the results of the field sobriety tests.  Appellant subsequently changed his plea to "no contest."  He was found guilty of both charges and sentenced.  This appeal follows.

{¶7}   Appellant assigns two errors for our review, both of which address the trial court's partial denial of his motion to suppress.

{¶8}   "Appellate review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8.   The appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. *Id.* Thereafter, the appellate court must determine, without deference to the trial court, whether the applicable legal standard has been met. *Id.* Thus, we review the trial court's application of the law to the facts de novo.  *State v. Holnapy*, 194 Ohio App.3d 444, 2011-Ohio-2995 (11th Dist.)

{¶9}   Appellant's first assignment of error reads:

3

**{¶10}** "The trial court erred in failing to suppress the arrest of defendant-appellant[.]"

**{¶11}** Appellant argues two issues under this assigned error. Appellant first asserts the arresting officer lacked reasonable cause upon which to base the stop of his vehicle. In support, appellant cites various cases holding that weaving minimally within one's lane of traffic, or touching the lines, is insufficient to support a traffic stop for crossing the lines.

**{¶12}** Generally, the decision to stop an automobile is reasonable where an officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). Appellant was charged with a violation of R.C. 4511.30, which prohibits driving left of center. At the suppression hearing, Sgt. Slocum did not testify appellant touched the center line on State Rte. 45; rather, he testified that appellant *crossed* the center line, into the other lane of traffic. Consequently, the officer had probable cause for making the traffic stop. Appellant's argument lacks merit.

**{¶13}** Appellant next asserts the arresting officer lacked probable cause to initiate field sobriety tests. He claims that a de minimus traffic violation, coupled with red, watery eyes, and a smell of alcohol emanating from a vehicle are insufficient to justify administration of field sobriety tests. We do not agree.

**{¶14}** In *State v. Evans*, 127 Ohio App.3d 56 (11th Dist.1998), this court set forth a non-exclusive list of factors to be considered when determining whether a police officer has a reasonable suspicion of intoxication justifying the administration of field sobriety tests. That list, with no one factor being dispositive, consists of the following:

**{¶15}** (1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.*, Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. *Id.* at 63, fn. 2.

**{¶16}** Here, several *Evans* factors support Sgt. Slocum's decision to administer field sobriety tests. The stop occurred at 2:22 a.m.; appellant's eyes were red and watering; a smell of alcohol emanated from his truck; appellant weaved left of center once and over the fog line repeatedly; appellant was unsteady exiting his truck; and he appeared to require the assistance of his arms to maintain balance. Considering the totality of the circumstances, we hold Sgt. Slocum had a reasonable basis to suspect appellant was intoxicated justifying administration of the field sobriety tests.

5

{¶17} Appellant's first assignment of error lacks merit.

{¶18} Appellant's second assignment of error provides:

{¶19} "The trial court erred in failing to suppress the results of the field sobriety tests[.]"

{¶20} Appellant argues the trial court erred in failing to suppress the results of the field sobriety tests because the state failed to present evidence regarding the National Highway Traffic Safety Administration ("NHTSA") or other reliable field sobriety testing standards. We do not agree.

{¶21} The state bears the burden of demonstrating that field sobriety tests were conducted in substantial compliance with NHTSA standards. *See State v. Slocum*, 11th Dist. Ashtabula No. 2007-A-0081, 2008-Ohio-4157, ¶38. There is no specific requirement, however, that the NHTSA manual, or even testimony concerning those standards, be introduced if the record demonstrates, even by inference, that the trial court took judicial notice of those standards. *State v. DeWulf*, 6th Dist. Fulton No. F-12-010, 2013-Ohio-2802, ¶27, citing *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶53. A court is empowered to take judicial notice of an adjudicative fact whether requested or not. Evid.R. 201(C). A party opposing a judicially noticed fact is entitled to be heard upon a timely objection. Evid.R. 201(E). If unchallenged, however, testimony showing the standards were followed, is sufficient to form a foundation for admission. Hence, only where a defendant specifically challenges the alleged lack of foundation must the state submit more particularized evidence of compliance. *Reed*, *supra*, at ¶54.

6

**{¶22}** At the hearing, Sgt. Slocum testified he was certified in the detection of OVI offenses. Namely, "things to look for in a potential OVI driver." And, "after making a stop, other evidence that would indicate the individual was operating while driving impaired." The officer further testified he was certified to administer the HGN test. He explained that, in the course of administering the HGN test, he looks for whether and when a subject's eyes involuntarily jerk as they focus on a specific target moving in specific directions. He testified that involuntary eye jerking, a.k.a. "nystagmus," is indicative of alcohol consumption. In utilizing his training, the officer testified he had made "literally hundreds" of arrests in his 28-year law enforcement career utilizing his training in field sobriety tests.

**{¶23}** Sgt. Slocum testified he first conducted the HGN, which includes three separate components. Regarding the first component, the sergeant stated he instructed appellant to watch the tip of his finger, keep his eye on the tip, and not move his head. He then moved his finger 90 degrees to one side of appellant's head and held it for four seconds. He then brought his finger back to the center, stopped, and repeated the process in the opposite direction. Next, the sergeant testified he administered the "smooth pursuit" component of the HGN test. Regarding this component, he instructed appellant to watch his finger as it moved from left to right, then right to left across his field of vision. The sergeant then administered the final component of the test. During this component, he moved his finger from the center to an approximate 45 degree angle from the eye, held it for four seconds and repeated.

**{¶24}** The sergeant testified that, in administering the HGN test, he is looking for six clues, three for each eye. If a subject exhibits all six clues, the sergeant testified, in

his experience, that individual has a more significant blood-alcohol concentration than one with less than six clues. After administering the three components of the HGN test on appellant, the sergeant testified he exhibited all six clues.

{¶25} The sergeant then testified he administered the one-leg-stand test and the walk-and-turn test. He stated he had training in field sobriety testing and explained each of the required steps appellant was asked to perform. The sergeant also explained how appellant physically faltered during each test, which led him to the conclusion that appellant was impaired.

{¶26} In its judgment entry, the trial court's factual findings outlined Sergeant Slocum's detailed explanation of the manner in which the tests were administered. Based upon these findings, the trial court drew the legal conclusion that the sergeant substantially complied with the NHTSA standards.

{¶27} The sergeant's testimony regarding his training and his detailed explanation regarding how he performed the tests form an adequate factual basis against which the trial court could measure its legal conclusion. Hence, one could reasonably conclude the court inferentially took notice of the standards and concluded that the state had satisfied the foundational requirements necessary for admission of the results. Further, appellant did not object to the manner in which the state elected to meet its burden of production regarding the officer's compliance with the standards. The state, therefore, was not required to provide a more particularized foundation to meet its burden. We therefore agree with the trial court that the trial court did not err in concluding Sgt. Slocum substantially complied with the NHTSA standards.

{¶28} Appellant's second assignment of error lacks merit.

**{¶29}** For the reasons discussed in this opinion, the judgment of the Ashtabula Municipal Court is affirmed.

TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

————————————————

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

**{¶30}** I concur fully with the majority's well-reasoned disposition of appellant's first assignment of error. However, I agree with appellant that the results of his field sobriety tests should have been suppressed. Consequently, I would reverse and remand on the basis of his second assignment of error.

**{¶31}** As the majority acknowledges, on a motion to suppress in an OVI case, the state bears the burden of showing that any field sobriety tests administered were conducted in substantial compliance with NHTSA, or other recognized, standards. R.C. 4511.19(D)(4)(b); *Slocum*, *supra*, at ¶38. The majority then cites to the opinions of the Sixth District in *DeWulf*, *supra*, and the Second District in *Reed*, *supra,* for the proposition that no testimony regarding the standards need be introduced by the state, so long as it can be inferred that the trial court took judicial notice of the standards. The state must carry its burden of showing substantial compliance by the high standard of clear and convincing evidence. R.C. 4511.19(D)(4)(b). I am somewhat dubious that

9

inferring a court took judicial notice of a fact or issue meets this standard. Further, I respectfully contend this is an incorrect statement of the law, at least as applied to the facts in this case.

{¶32} I admit the *DeWulf* court relied on *Reed* for the proposition that "[t]here is no requirement that the standards manual or testimony concerning the standards be introduced if the record shows, even inferentially, that the [trial] court took judicial notice of the standards." *DeWulf* at ¶27, citing *Reed* at ¶53. And that proposition is stated in *Reed*. But the facts in *Reed* do not underpin the reasoning. In that case, the arresting officer *did* testify he was trained pursuant to NHTSA standards, under the manual, and that he received periodic updates in his training. *Reed* at ¶55. In *Reed*, the arresting officer *was* asked by the prosecutor whether he complied with NHTSA standards in administering the field sobriety tests, and replied affirmatively. *Id.* at ¶56. Further, the actual holding of the Second District was, "In order for the substantial compliance permitted by R.C. 4511.19(D)(4)(b) to be found, the State must offer evidence showing what the particular NHTSA standards are and that the officer acted in conformity with them." *Id.* at ¶57, citing *State v. Perkins*, 10th Dist. Franklin No. 07AP924, 2008-Ohio-5060. Finally, the *Reed* court made the following observation:

{¶33} "In the present case, the prosecutor inquired of [the arresting officer] whether and how he administered the tests in accordance with his training. A witness's direct responses to that line of inquiry may be insufficient to satisfy R.C. 4511.19(D)(4)(b), where there is no testimony as to the particular NHTSA standard and the manual itself is not admitted in evidence." *Reed* at ¶58, citing *State v. Nickelson*, 6th Dist. Huron No. H-00-036, 2001 Ohio App. LEXIS 3261 (July 20, 2001).

10

{¶34} In sum, I do not think *DeWulf* is good law, or that *Reed* actually stands for the proposition advanced by the majority. I *do* agree with the *Reed* court that the state must offer some evidence of what standards were employed by the arresting officer, and that the officer's administration of the field sobriety tests substantially complied with those standards. This is a majority viewpoint. As the Third District has noted:

{¶35} "The issue of what evidence is required to set forth the standards for field sobriety tests has been addressed by numerous courts in Ohio. The general consensus has been that if no evidence of a reliable field sobriety testing standard is introduced by the State at the suppression hearing, either via testimony or through the introduction of the applicable manual, the State has failed to meet its burden of demonstrating compliance. See *State v. Bish,* 191 Ohio App.3d 661, 2010-Ohio-6604, * * *; *State v. Broom,* 2d Dist. No. 22468, 2008-Ohio-5160 (holding that failure to present any evidence that test was done in compliance with NHTSA standards required suppression of test results); *State v. Perkins,* 10th Dist. No. 07AP-924, 2008-Ohio-5060 (holding that suppression not necessary when officer testified as to training, standards, procedure used, and that he had complied with the standards); *State v. Brown,* 166 Ohio App.3d 638, 2006-Ohio-1172, * * * (holding that failure of the state to present evidence of NHTSA standards required suppression of field sobriety test results); *State v. Sunday,* 9th Dist. No. 22917, 2006-Ohio-2984 (holding that failure of state to show compliance with standards requires suppression of test results); *Gates Mills v. Mace*, 8th Dist. No. 84826, 2005-Ohio-2191 (holding that city had the burden of proving that officer complied with testing standards); *State v. Ryan,* 5th Dist. No. 02-CA-00095, 2003-Ohio-2803 (holding that the state bears the burden of showing how the tests were performed

11

and that they conformed with the standards); and *State v. Nickelson* (July 21, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. LEXIS 3261 (holding that the state must prove that tests were completed in compliance with the standards)." (Parallel citations omitted.) *State v. Kitzler*, 3d Dist. Wyandot No. 16-11-03, 2011-Ohio-5444, ¶13.

{¶36} I respectfully do not find the testimony of Sgt. Slocum established, by clear and convincing evidence, that he administered the field tests in substantial compliance with the NHTSA, or other recognized, standards. He did not testify that he did so. I also remark on his testimony that there are no clues related to the one-leg stand test, or the walk-and-turn test. Appellant was arrested on November 1, 2009. In *State v. Draper*, 5th Dist. Fairfield No. 10 CA 29, 2010-Ohio-6592, appellant was arrested for OVI on October 31, 2009, at approximately midnight – about two and one-half hours before appellant herein was arrested. *Id.* at ¶1-3. The arresting officer in that case testified there are four clues on the one-leg stand test, and eight on the walk-and-turn. *Draper* at ¶5. I do not have a copy of the NHTSA manual then in effect, and am unaware, therefore, what if any clues appertained to these tests at the time, and which testimony was correct. But it further convinces me that the state failed to carry its burden in this case.

{¶37} I respectfully dissent.