DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Edmund Sunday has appealed from his conviction in Akron Municipal Court of operating a motor vehicle while under the influence of alcohol and operating a motor vehicle with a prohibitive breath alcohol concentration. This Court reverses.
 I {¶ 2} On December 26, 2004, Appellant was charged with one count of operating a motor vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a) and one count of operating a motor vehicle with a prohibitive breath alcohol concentration ("BAC"), in violation of R.C.4511.19(A)(1)(d). On December 30, 2004, Appellant was arraigned before the Akron Municipal Court and entered "not guilty" pleas to both charges.
 {¶ 3} On January 26, 2005, Appellant filed a motion to suppress, wherein he challenged "jurisdiction/venue", reasonable suspicion for the traffic stop, probable cause for the arrest, failure to adhere to standardized procedures for field sobriety tests and numerous provisions of the Ohio Administrative Code. On April 1, 2005, a suppression hearing was conducted and on July 18, 2005, the trial court denied Appellant's motion.
 {¶ 4} On July 26, 2005, Appellant filed a motion to reconsider and dismiss. On August 10, 2005, the court denied Appellant's motion. On October 3, 2005, his motion to suppress having been denied, Appellant entered "no contest" pleas and was subsequently found guilty on both the OVI and BAC counts.
 {¶ 5} Appellant has timely appealed, asserting four assignments of error. We will address some of the assignments of error out of order to facilitate our review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY UPON HIS PLEAS OF NO CONTEST AS APPELLEE FAILED TO ESTABLISH THE REQUISITE JURISDICTION."
 {¶ 6} In his first assignment of error, Appellant has argued that the trial court erred in finding him guilty upon his no contest pleas. Specifically, Appellant has argued that the State failed to establish "the requisite jurisdiction." We disagree.
 {¶ 7} We begin by noting that Appellant's brief is less than clear as to what he is challenging in this assignment of error. Appellant has argued that the State failed to establish jurisdiction because the charging instrument failed to allege proper "jurisdiction/venue." Appellant has argued that the complaint alleged the crimes happened at the intersection of Canton Road and Nidover, in the Village of Lakemore, when in actuality, Canton Road at Nidover is in Springfield Township. According to Appellant, this defect invalidated the charging instrument, which in turn invalidated his conviction upon his plea of no contest. We disagree.
 {¶ 8} This Court has determined that Appellant has essentially argued two separate theories in his first assignment of error. First, it appears that Appellant has argued that the State failed to establish proper venue to prosecute him in Akron Municipal Court. Second, it appears that Appellant has argued that the geographical defect in the complaint invalidated the charging document and his conviction. We will address each in turn.
 {¶ 9} Venue is the legal term for the proper place for a trial to occur. See Black's Law Dictionary (7 Ed. 1999) 1553. Venue should not be confused with jurisdiction as they are distinct legal concepts. Craig v. Consolidated Rail Corp.
(April 6, 1988), 9th Dist. No. 13332, at 4. Venue embodies "the geographic division where a cause can be tried[.]" Morrison v.Steiner (1972), 32 Ohio St.2d 86, 88. "Jurisdiction, on the other hand, relates to the court's power to hear and determine a case on its merits." Craig at 4.
 {¶ 10} R.C. 1901.20(A)(1) states that "[t]he municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory." While the statute employs the term "jurisdiction," it "is used in the context of resolving the situs of a case."State v. Bobinchuck (Sept. 13, 2000), 9th Dist. No. 19536, at fn.1. Municipal court jurisdiction has often been referred to as "territorial jurisdiction" and, as such, is essentially the same as venue. Id. Simply, this means that "[o]nce venue is determined to be appropriate in a municipal court, it is assumed that the court has territorial or subject matter jurisdiction as well."State/Village of Carlisle v. McNeese (Oct. 23, 1995), 12th Dist. No. CA93-12-108, 1995 WL 617589, at *1.
 {¶ 11} Pursuant to Crim.R. 12(C)(2), venue may not normally be challenged prior to trial as it is a fact that must be proven beyond a reasonable doubt at trial. See State v. Simpson, 9th Dist. No. 21475, 2004-Ohio-602, at ¶ 73. The only way a defendant may challenge venue prior to trial is if it equates to an actual defect in the indictment-for example, if the indictment failed to allege venue. Id.
 {¶ 12} In the instant matter, this Court finds that Appellant did allege that the complaint failed to properly allege venue in his pretrial motion to dismiss and/or reconsider. Appellant specifically argued that the:
"[C]omplaint before this Court indicates that the violation occurred on `Canton Road at Nidover in the municipality of Lakemore in Summit County.' This is a false statement. Canton Road at Nidover is in Springfield Township — not the Village of Lakemore. This alone makes the complaint invalid and this Court should dismiss the same for lack of jurisdiction/venue."
 {¶ 13} However, we find that venue was proper in this case. While it is apparent from the record that the intersection of Canton Road at Nidover is in Springfield Township, not the Village of Lakemore, venue is proper in the Akron Municipal Court when a misdemeanor is committed within the limits of its territory. See R.C. 1901.20(A)(1). According to R.C. 1901.02(B), the Akron Municipal Court has jurisdiction within Bath, Northampton, Richfield, and Springfield townships, and within the municipal corporations of Fairlawn, Lakemore, and Mogadore.
 {¶ 14} Because OVI is a misdemeanor of the first degree and was committed within the limits of the Akron Municipal Court's statutorily granted territory, we find that venue was proper in this case despite of the defect in the charging instrument.
 {¶ 15} Next we will address Appellant's argument that the defect in the charging instrument invalidated the complaint and subsequently, his conviction upon his no contest plea. As noted above, all defects in the indictment must be raised in pre-trial motions. Crim.R. 12(C)(2). It is clear that Appellant raised the defect issue prior to trial, therefore, we will address the substantive merits of Appellant's argument.
 {¶ 16} It is well established that the "primary purpose of the charging instrument in a criminal prosecution is to inform the accused of the nature of the offense with which he or she is charged." (Citations omitted). Akron v. Holland Oil Co. (2001),146 Ohio App.3d 298, 302-303. Appellant has not argued that he was uninformed of the State's intent to prosecute him for OVI and BAC. He has not argued that the defect in the charging instrument caused him in any way to be unable to prepare for trial. Appellant has failed to show how he was prejudiced by the defect in the indictment.
 {¶ 17} Accordingly, we find that the geographical mistake on the ticket was harmless error. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" Pursuant to Crim.R. 52(A), harmless errors shall be disregarded. For an error in a criminal matter to be harmless, the error must be harmless beyond a reasonable doubt. State v. Tate, 9th Dist. No. 21943,2005-Ohio-2156, at ¶ 22. "Technical defects in indictments which do not affect the defendant's substantial rights or prejudice his defense do not present a claim of deprivation of the rights of an accused under the United States Constitution." State v.Reimsnyder (Dec. 30, 1994), 6th Dist. No. E9-3-71, 1994 WL 73531, at *12. In the present case, Appellant has failed to demonstrate how the ticket's assertion that Canton Road at Nidover is in Lakemore as opposed to Springfield contributed to his no contest plea, affected his substantial rights, or prejudiced him in any way.
 {¶ 18} Accordingly, Appellants' first assignment of error lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED IN FINDING THAT PATROLMAN EDDY SUBSTANTIALLY COMPLIED WITH NHTSA WHERE PATROLMAN EDDY TESTIFIED THAT HE DID NOT KNOW WHAT NHTSA WAS AND DID NOT KNOW IF HE COMPLIED WITH ITS REQUIREMENTS."
 {¶ 19} In his third assignment of error, Appellant has argued that trial court erred in finding that Officer Eddy substantially complied with National Highway Traffic Safety Administration ("NHTSA") guidelines, and thus denying his motion to suppress. Specifically, Appellant has argued that Officer Eddy was required to strictly comply with the standardized NHTSA procedures and that his testimony at the suppression hearing clearly established that Officer Eddy did not strictly or substantially comply. We agree.
 {¶ 20} In 2000, the Ohio Supreme Court held that strict compliance with standardized testing procedures was required for the results of a field sobriety test to serve as evidence of probable cause to arrest. State v. Homan (2000),89 Ohio St.3d 421, paragraph one of the syllabus. Subsequently, the legislature revised R.C. 4511.19 to require only substantial compliance with standardized procedures for the results of field sobriety tests to be admissible. State v. Lytle, 9th Dist. No. 04CA0016-M, 2004-Ohio-4964, at ¶ 5. The amended statute allows the State to introduce the results of field sobriety tests if:
"[A] law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration[.]" R.C. 4511.19(D)(4)(b).
 {¶ 21} Accordingly, the burden of establishing substantial compliance on the part of the administering officer is on the State, as part of its case in chief. This Court is careful not to extol the NHTSA guidelines as the sole "reliable, credible, and generally accepted field sobriety test[.]" R.C. 4511.19(D)(4)(b). R.C. 4511.19(D)(4)(b) clearly states that the administering officer need only substantially comply with "the testing standards for any reliable, credible, and generally accepted field sobriety test[.]" These testing standards include, but are specifically not limited to the NHTSA guidelines. However, in the present case, the State failed to demonstrate that the administering officer substantially complied with any recognizable, credible standardized testing procedure, let alone the NHTSA guidelines.
 {¶ 22} At the suppression hearing, the State produced the testimony of Officer Raymond Eddy of the Lakemore Police Department. While Officer Eddy testified that he was certified to perform breathalyzer tests and to conduct field sobriety tests, he did not testify that he performed any of the tests in substantial compliance with any standardized testing standards. Officer Eddy testified that he performed the HGN test, the walk and turn test, and the one legged stand test according the procedures with which he had been trained, but did not testify about what guidelines he used. He described all of the tests in rudimentary terms, but could not state under what guidelines he had been trained or whether the tests conformed to any standardized testing procedures.
 {¶ 23} On cross-examination, Officer Eddy testified that he didn't recall if his training utilized the NHTSA guidelines. In fact, he didn't recall what guidelines were used to instruct him. For example, when asked if administering a HGN test from the sitting position is acceptable under NHTSA guidelines, he testified that "it should be in there somewhere." When asked if he could find the rule if provided a handbook, Officer Eddy testified that he didn't know if he could find it because he wasn't sure if it was even in the handbook. Finally, Officer Eddy testified that he didn't know if the NHTSA training was the same training that he had. At no point during his testimony, did Officer Eddy testify that he substantially complied with any specific guidelines, NHTSA or otherwise.
 {¶ 24} The State also failed to admit into evidence a NHTSA (or equivalent) manual containing the guidelines. As such, this Court has no point of reference from which to determine whether Officer Eddy's conduct substantially complied with standardized testing procedures. In similar situations, where, as here, the administering officer failed to testify adequately concerning the guidelines he used to conduct the tests and the State failed to submit a manual, Ohio courts have held that the results of the field sobriety tests should be suppressed. State v. Wells, 2nd Dist. No. 20798, 2005-Ohio-5008, at ¶ 32; Gates Mills v. Mace,
8th Dist. No. 84826, 2005-Ohio-2191, at ¶¶ 24-26; State v.Purdy, 6th Dist. No. H-04-008, 2004-Ohio-7069, at ¶¶ 27-28.
 {¶ 25} Based on the foregoing, this Court finds that the trial court did err in finding that Officer Eddy had substantially complied with NHTSA guidelines when the State failed to establish through the officer's testimony or admission of a manual that the officer did in fact substantially comply with standardized testing procedures.
 {¶ 26} Appellant's third assignment of error has merit.
 Assignment of Error Number Two
"THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE TO ARREST THE APPELLANT BASED UPON BLOODSHOT EYES AND AN ODOR OF A BREATH MINT." {¶ 27} In his second assignment of error, Appellant has argued the probable cause did not exist to arrest him. Specifically, Appellant has argued that bloodshot eyes and an odor of breath mint are insufficient indicia to establish probable cause to arrest. We disagree.
 {¶ 28} Appellant argued the lack of probable cause in his motion to suppress. Accordingly, as a motion to suppress involves a mixed question of law and fact, "this Court defers to the trial court's findings of fact but conducts a de novo review of the trial court's application of the appropriate legal standard to those facts." State v. Roper, 9th Dist. No. 22566,2005-Ohio-6327, at ¶ 25. Further, this Court reviews a probable cause determination de novo. State v. Salas, 9th Dist. No. 21891, 2004-Ohio-6274, at ¶ 17.
 {¶ 29} First, this Court must note that the traffic stop itself was proper. It is well established that "[a]n officer may stop a vehicle to investigate a suspected violation of a traffic law." State, City of Akron v. Tomko (Nov. 3, 1999), 9th Dist. No. 19253, at 4, citing Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12. In the instant matter, Officer Eddy, noticed that Appellant's license plate light was out and that Appellant's vehicle traveled left of the center line. This Court finds that, based on Officer Eddy's observations, the initial traffic stop was not improper.
 {¶ 30} Further, we find that the investigatory detention necessary to conduct the field sobriety tests was not improper. When reviewing the propriety of an investigatory stop, this Court must consider the totality of the circumstances. Tomko at 5. However, "[p]robable cause is not necessary to conduct a field sobriety test." Tomko at 5, citing State v. Gustin (1993),87 Ohio St.3d 859, 860. What is necessary is a reasonable suspicion of criminal activity. Tomko at 5. A "reasonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." Id. Furthermore, if an officer discovers additional "specific and articulable facts" that create a "reasonable suspicion beyond that which prompted the stop, the officer may continue to detain the individual to investigate those new concerns." Id.
 {¶ 31} As discussed above, Officer Eddy observed Appellant's vehicle cross the center line at approximately 1:30 a.m. on December 26. He observed Appellant's bloodshot eyes and noticed a strong odor of breath mint. Officer Eddy testified that in his experience, impaired drivers often exhibit red, bloodshot eyes and frequently attempt to use gum or mints to mask the odor of alcohol. This Court finds that this combination of factors — the late hour, the Christmas holiday, the crossing left of center, the bloodshot eyes and the excessive odor of mint, was sufficient to establish a reasonable suspicion in the mind of an experienced police officer to detain an individual pending further investigation into the possibility the individual was driving while under the influence. See Id. at 5. Thus, this Court finds that Officer Eddy's administration of the field sobriety tests was proper in the instant matter.
 {¶ 32} Finally, we address the arrest itself. This Court has held that "[p]robable cause [to] arrest for driving under the influence exists if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." (Quotations omitted). In re V.S., 9th Dist. No. 22632, 2005-Ohio-6324, at ¶ 13. Further, the totality of the facts and circumstances can support a finding of probable cause to arrest even when the results of the field sobriety tests must be excluded for lack of compliance to standardized procedures. See Akron v. Buchwald, 9th Dist. No. 21433, 2003-Ohio-5044, at ¶ 14.
 {¶ 33} This Court finds that the totality of the facts and circumstances available to Officer Eddy — the late hour, the Christmas holiday, Appellant's crossing the center line, Appellant's bloodshot eyes, the smell of mint, and Officer Eddy's observations during the field sobriety tests, such as Appellant swaying while standing — "were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19."In re V.S. at ¶ 13. See also Akron v. Norman, 9th Dist. No. 22743, 2006-Ohio-769 (crossing left of center, bloodshot eyes and officer's observations during field sobriety tests were sufficient to find appellant guilty of driving under the influence). Therefore, probable cause existed to arrest Appellant for driving under the influence.
 {¶ 34} Appellant's second assignment of error lacks merit.
 Assignment of Error Number Four
"THE TRIAL COURT ERRED IN FINDING SUBSTANTIAL COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE AS TO THE BREATHALYZER AS THE APPELLANT CHALLENGED, IN HIS MOTION TO SUPPRESS, THE EXPIRED CALIBRATION SOLUTION AND FAILURE TO CONDUCT CALIBRATION TESTS WITHIN SEVEN DAYS."
 {¶ 35} In his fourth assignment of error, Appellant has argued that the trial court erred in finding that the State substantially complied with the Ohio Administrative Code in conducting Appellant's breathalyzer test. Specifically, Appellant has argued that the Village of Lakemore ("Lakemore") used an non-calibrated instrument and an expired calibration solution to conduct Appellant's breathalyzer test. We agree.
 {¶ 36} The law on this issue is clear. It is settled law that "once a defendant has challenged the foundational evidentiary requirements of a BAC test, the State need only demonstrate substantial compliance with the * * * Ohio Administrative Code."Tomko at 12, citing State v. Plummer (1986),22 Ohio St.3d 292, at syllabus. The Ohio Supreme Court has reasoned that "strict compliance is not always realistically or humanly possible." Plummer, 22 Ohio St.3d at 294. Because of this simple truth, strict compliance "is not a prerequisite to the admissibility of BAC test results." Tomko at 6, citingPlummer, 22 Ohio St.3d at 294.
 {¶ 37} Appellant has argued that O.A.C. 3701-53-04(A) requires an instrument check be performed on any approved breath testing instrument no less than once every seven days. Appellant has further argued that since the instrument in question was tested on December 22, 2004 and again on December 30, 2004 (a span of eight days), the instrument was not calibrated, that Lakemore failed to even substantially comply with the O.A.C. and that results from Appellant's test should be inadmissible. Appellant's argument is flawed for two reasons.
 {¶ 38} First, while Appellant is correct in his observation that the O.A.C. requires instrument checks no less than once every week, the Code further states: "[t]he instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check." O.A.C. 3701-53-04(A). One hundred and ninety-two hours is the equivalent of eight 24-hour days. Accordingly, Lakemore not only substantially complied with O.A.C. 3701-53-04(A), but strictly complied with it as well.
 {¶ 39} Second, regardless of the time span between the two tests, Appellant's breath test was conducted on December 26, 2004, just four days after the instrument had been inspected. Therefore, at the time of Appellant's test, the machine was calibrated in full compliance with O.A.C. 3701-53-04(A).
 {¶ 40} Additionally, Appellant has argued that the calibration solution used by Lakemore was expired. O.A.C. 3701-53-04(C) states that "[a]n instrument check solution shall not be used more than three months after its date of first use, or after the manufacturer's expiration date (one year after manufacture) whichever comes first." (Emphasis added). Id. A review of the record shows that the solution's date of first use was October 13, 2004. Therefore, under the O.A.C., the solution needed to be discarded on January 13, 2005. The record indicates that the solution at issue was actually scheduled to be discarded on January 11, 2005. Appellant's test was conducted on December 26, 2004, within the three month window. However, the manufacturer's expiration of date of December 1, 2004, came first and is thus the controlling expiration date. Accordingly, under the O.A.C., the calibration solution was expired.
 {¶ 41} This Court has held that in order to challenge compliance with a statutory or regulatory provision, a defendant must allege specific grounds in a pretrial motion. State v.Luhrs (1990), 69 Ohio App.3d 731, 736. See also Crim.R. 47 (stating that a pretrial motion "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought"). It is only then that the prosecution will be put to its burden to demonstrate substantial compliance with the regulation directly at issue as a prerequisite to admitting breathalyzer test results. Id.
 {¶ 42} In his motion to suppress, Appellant alleged a violation of O.A.C. 3701-53-04(C). Further, in his motion to dismiss and/or reconsider, Appellant specifically challenged the use of expired calibration solution. Both of Appellant's motions were pretrial motions and therefore were the proper vehicle for challenging compliance with O.A.C. 3701-53-04(C). Accordingly, because Appellant properly raised the issue of regulatory compliance and because the calibration solution was in fact expired, we find that the prosecution could not satisfy its burden of demonstrating substantial compliance with O.A.C. 3701-530-4(C).
 {¶ 43} Appellant's fourth assignment of error has merit.
 III {¶ 44} Based on the foregoing, Appellant's first and second assignments of error are overruled. Appellant's third and fourth assignments of error are sustained. The judgment of the trial court is reversed, and the cause remanded for proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Moore, J. Boyle, J. concur