[Cite as *State v. Bray*, 2021-Ohio-2049.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 20CA0051-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID BRAY | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 19 TRC 01648 |

DECISION AND JOURNAL ENTRY

Dated: June 21, 2021

SUTTON, Judge.

{¶1} Defendant-Appellant, David Bray, appeals decisions of the Medina Municipal Court related to his motion to suppress certain evidence obtained during a traffic stop. For the reasons outlined below, we affirm the judgment of the trial court.

I.

{¶2} Mr. Bray was driving his vehicle late at night on March 13, 2019. Trooper Brandon Betzel, of the Ohio State Highway Patrol, observed Mr. Bray speeding. Trooper Betzel turned to pursue Mr. Bray and activated his overhead lights to initiate a traffic stop. Mr. Bray did not respond to Trooper Betzel's overhead lights. Mr. Bray drove into a parking lot, parked his car, and exited his vehicle before he noticed Trooper Betzel behind him. Trooper Betzel pulled in behind Mr. Bray with his overhead lights flashing and a spotlight on his vehicle. Trooper Betzel asked Mr. Bray to return to his car and, after an investigation, arrested him for operating a vehicle while under the influence of alcohol or drugs ("OVI").

{¶3} Mr. Bray was charged with OVI in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d) and speeding in violation of R.C. 4511.21(C). He pled not guilty and later moved to suppress certain evidence prior to trial, including the results of the field sobriety tests and the results of the breath test.

{¶4} The trial court held a suppression hearing on three of the issues raised in Mr. Bray's motion to suppress and indicated it would address the remaining issues related to the breath test at a later hearing if necessary. Ruling on the first three issues in the suppression motion, the trial court found that the arresting officer had reasonable suspicion to detain Mr. Bray for field sobriety testing, that the field sobriety tests were administered in substantial compliance, and that the officer had probable cause to make the arrest of Mr. Bray. The trial court set a hearing on the remaining suppression issues related to the breath test. After that hearing, counsel for the parties filed a "Pretrial Conference Report" requesting the case be set for trial. Two months later, and ten days before trial, Mr. Bray filed a motion seeking a hearing on the remaining suppression issues or a continuance of the trial. The trial court denied Mr. Bray's request the next day. The case proceeded to trial and the jury found Mr. Bray guilty of driving under the influence.

{¶5} Mr. Bray now raises five assignments of error for our review. We have re-ordered certain assignments of error to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT [ERRED] IN FINDING THAT THE ARRESTING OFFICER HAD REASONABLE ARTICULABLE SUSPICION TO DETAIN [MR. BRAY] BEYOND THE SCOPE OF THE INITIAL TRAFFIC STOP TO CONDUCT FIELD SOBRIETY TESTING.**

**{¶6}** In his second assignment of error, Mr. Bray argues that the arresting officer, Trooper Betzel, lacked a reasonable and articulable basis for the continued detention of Mr. Bray to administer field sobriety tests. For the reasons below, this Court disagrees.

### Standard of Review

**{¶7}** A motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, *citing State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

**{¶8}** This Court has addressed the constitutional protections afforded to drivers and what is required to overcome those rights. As this Court has stated:

> The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment." *State v. Keserich*, 5th Dist. Ashland No. 14-COA-011, 2014-Ohio-5120, ¶ 8, quoting *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 17. However, a police officer does not violate an individual's constitutional rights by administering field sobriety tests if the police officer has reasonable suspicion of criminal activity. *See State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 12. "Reasonable suspicion requires that the officer 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Buchanan*, 9th Dist. Medina No. 13CA0041-M, 2014-Ohio-3282, ¶ 8, quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968). Reasonable suspicion is based on the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

*State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10. We note that "no single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case." *Id*. at ¶ 12.

**Analysis of Trial Court's Findings of Fact**

{¶9} The trial court made numerous findings of fact based on the evidence and arguments presented at the suppression hearing. These findings of fact formed the basis for the trial court's conclusion that Trooper Betzel had a reasonable and articulable suspicion to detain Mr. Bray. The trial court found that the following facts gave rise to the reasonableness of Trooper Betzel's suspicions and detention of Mr. Bray: (1) the stop occurred at 11:30 p.m. on a Thursday night; (2) Mr. Bray's vehicle was travelling at a speed of nearly 20 m.p.h. over the posted 35 m.p.h. speed limit; (3) Trooper Betzel's discernment that a "moderate" odor of alcohol was emanating first from Mr. Bray's vehicle and then his breath; (4) Mr. Bray's bloodshot and glassy eyes; (5) testimony from Trooper Betzel that indicated some degree of slurred speech; (6) Mr. Bray's admission that he had left an establishment that served alcohol and consumed one beer; and (7) Mr. Bray's delay in stopping his vehicle in response to Trooper Betzel's lights.

{¶10} Mr. Bray specifically challenges two of the trial court's findings of fact as not supported by the evidence in the record. First, Mr. Bray argues the trial court erred in finding that he delayed stopping his vehicle to a non-negligible degree after Trooper Betzel activated his overhead lights and spotlight. Second, Mr. Bray argues the trial court erred in finding that Trooper Betzel's testimony implied Mr. Bray was slurring his speech to some degree.

**Stopping of Vehicle**

{¶11} Mr. Bray challenges the trial court's characterization that he delayed in stopping his vehicle "to a non-negligible degree" after Trooper Betzel activated his overhead lights.

Trooper Betzel gave the following testimony regarding the stop of Mr. Bray at the suppression hearing:

Q:    So [Mr. Bray] turns on to Hunt and then turns into a plaza parking lot?
A:    Correct.
Q:    What happened then?
A:    So my lights are on.  The driver shoots into a parking spot there and then the driver proceeds to turn off, get out of the car and lock his car and start walking towards the business, at which point I had to get out of my car and kind of tell him to get back in the car.

{¶12}  A review of the video from Trooper Betzel's dashboard camera that was admitted into evidence at the suppression hearing confirms this account.  The video shows that Trooper Betzel was behind Mr. Bray's car for 21 seconds with his overhead lights activated before Mr. Bray noticed Trooper Betzel behind him.  For 10 of those 21 seconds a spotlight was shining directly into Mr. Bray's vehicle.  Mr. Bray crossed the parking lot, came to a complete stop, turned his car off, exited his vehicle, locked his doors, and began to walk away before he appeared to notice Trooper Betzel.  Mr. Bray is incorrect in characterizing the delay as 10 seconds.  The review of the dashboard camera video showed Trooper Betzel activated his lights at the 1:30 mark and Mr. Bray exited the vehicle and turned to see Trooper Betzel at the 1:51 mark.

{¶13}  In *State v. Todd*, 9th Dist. Wayne No. 19AP0012, 2020-Ohio-963, ¶ 15-16, this Court stated that a dashboard camera video showing a suspect taking about 20 seconds or longer than usual to stop, in response to an officer's lights, was not "particularly egregious."  However, after a review of the dashboard camera video in this case, we find this case distinguishable from *Todd*.  In *Todd*, this Court found, after a review of the dashboard camera video, that Ms. Todd appeared to begin braking as soon as the officer activated his lights.  *Id*. at ¶ 15.  While Ms. Todd took approximately 20 seconds to come to a complete stop, the video did not show Ms. Todd's conduct to be "particularly egregious."  *Id.* at ¶ 16.  The fact that Ms. Todd began braking

immediately indicates she was aware of, and responded to, the officer's lights behind her. Here, the review of the dashboard camera video shows no indication Mr. Bray was stopping in response to Trooper Betzel's lights. The video, instead, showed that Mr. Bray appeared to pull into a parking space and exit his vehicle because he planned to go inside a nearby business. Mr. Bray appeared to be surprised when he saw Trooper Betzel behind him despite Trooper Betzel having been behind him with both his overhead lights and a spotlight on Mr. Bray's vehicle.

{¶14}  We conclude the trial court's finding that there was a delay in Mr. Bray stopping to be supported by competent, credible evidence presented at the suppression hearing.

### Slurred Speech

{¶15}  Trooper Betzel also testified that Mr. Bray's speech was not "dramatically slurred," which the trial court took to mean that Mr. Bray's speech was slurred to some extent. Mr. Bray challenges this conclusion of the trial court. A review of the suppression hearing transcript indicates that on direct examination, Trooper Betzel made the following statement regarding Mr. Bray's speech:

Q:   Did you make any observations of this gentlemen with respect to his speech?
A:   I believe his speech was okay, it wasn't dramatically slurred or anything like that.

Later in the same hearing, on cross examination, Trooper Betzel gave the following answer when asked about Mr. Bray's speech:

Q:   Okay. All right. And you said his speech, I believe, you marked as okay, but his speech was normal for -- for a normal person, as much as you have conversed with him?
A:   Uhm-hum. Correct.

{¶16}  Because of this testimony, we cannot conclude the evidence supports the trial court's finding that Mr. Bray's speech was slurred. However, as stated by this Court in

*Hochstetler, supra*, no single factor is dispositive of whether a law enforcement officer is legally justified in detaining a suspect for field sobriety testing. While the evidence does not support this singular finding of fact made by the trial court, the remaining findings of fact cited by the trial court are supported by competent, credible evidence in the record for the reasons stated below.

{¶17} A review of the record shows that, at the suppression hearing, Trooper Betzel testified the stop occurred at a late hour, around 11:30 p.m., increasing the likelihood of the driver being under the influence. Trooper Betzel testified his radar measured Mr. Bray's speed at 53 m.p.h. in an area with a posted speed of 35 m.p.h., and in his experience, excessive speed was an indicator of possible driver impairment. Trooper Betzel also testified he smelled a "moderate" odor of alcohol emanating first from Mr. Bray's vehicle and then from his breath. He described Mr. Bray's eyes as bloodshot and glassy. Trooper Betzel also testified that Mr. Bray admitted he had consumed alcohol earlier in the evening at a nearby establishment, and that in his experience, drivers were often not truthful regarding the amount of alcohol they had consumed.

{¶18} Trooper Betzel testified about his experience and training with the Ohio State Highway Patrol. Prior to joining the agency, Trooper Betzel completed the training program at the Ohio State Highway Patrol Academy. As part of his academy training, he received one week of field sobriety test training that included instruction on the administration of field sobriety tests in compliance with the National Highway Transportation Administration ("NHTSA") manual. Before his admission to the academy, Trooper Betzel spent one-year interning with the agency where he rode along with other troopers as they apprehended impaired drivers. After graduating, he completed a postgraduate Advanced Roadside Impairment Driver Enforcement course where he received additional education and training on identifying impaired drivers. Trooper Betzel also testified he had completed 150 OVI stops in Medina alone, and, that in his experience, excessive

speeding, while not listed as a factor indicating impairment in the NHTSA manual, could be an indicator of impairment.

{¶19} Because the findings of fact are supported by competent, credible evidence in the record, we accept them as true for our analysis and now determine whether these facts are sufficient to establish that Trooper Betzel had the requisite reasonable and articulable suspicion to arrest Mr. Bray.

**Reasonable and Articulable Suspicion**

{¶20} Mr. Bray cites what he contends are several factually analogous cases that require officers to observe more than bloodshot eyes, a minor traffic violation, and an admission of consumption before the administration of field sobriety tests. However, Mr. Bray is incorrect in his conclusion that those are the only facts the trial court relied upon in concluding that Trooper Betzel had a reasonable and articulable suspicion to detain Mr. Bray. In addition to the three facts Mr. Bray mentions, the trial court also noted the following in its finding of reasonable and articulable suspicion: (1) the stop occurred around 11:30 p.m. at night, a "circumstance commonly understood to increase the probability of law enforcement encountering an impaired driver"; (2) Trooper Betzel's testimony that he observed a "moderate odor" of alcohol coming from Mr. Bray's car and then specifically from Mr. Bray's breath; and (3) that Mr. Bray "delayed to a non-negligible degree the stopping of his vehicle after [Trooper Betzel] deployed his overhead lights."

{¶21} Viewing the totality of the circumstances at the moment Trooper Betzel ordered Mr. Bray out of the vehicle, we conclude that Trooper Betzel had reasonable, articulable suspicion to prolong the detention for the purposes of conducting the field sobriety tests. *See State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 31 (noting that the "late hour" contributed to the officer's reasonable suspicion); *State v. Tomko*, 9th Dist. Summit No. 19253, 1999 WL 1037762,

*3 (Nov. 3, 1999) (concluding that the defendant's bloodshot eyes and smell of alcohol contributed to the officer's reasonable suspicion); *State v. Dalchuk*, 9th Dist. Summit No. 21423, 2003-Ohio-4152, ¶ 16 (noting that the officer's observation that defendant was speeding contributed to officer's reasonable suspicion). Therefore, Mr. Bray's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT'S FINDINGS OF FACT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶22} In his first assignment of error, Mr. Bray argues that the trial court's findings of fact were against the manifest weight of the evidence. Although the assigned error has challenged the manifest weight of the evidence, Mr. Bray has argued that the trial court's findings of fact related to the suppression motion were not supported by competent, credible evidence. Given that we reviewed the trial court's findings of fact and found above, with one exception, that the trial court's findings were supported by competent, credible evidence in the record, Mr. Bray's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT [ERRED] IN FINDING THAT THE HORIZONTAL GAZE NYSTAGMUS TEST WAS CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE NHTSA MANUAL.**

{¶23} In his third assignment of error, Mr. Bray argues the trial court erred by concluding that Trooper Betzel administered the Horizontal Gaze Nystagmus ("HGN") field sobriety test in substantial compliance with the NHTSA manual. Specifically, Mr. Bray argues that the first scored portion of the HGN test, the check for lack of smooth pursuit, was performed too fast.

### Standard of Review for Field Sobriety Tests

{¶24} R.C. 4511.19 requires that in order for the results of field sobriety tests to be admissible, the tests must have been administered in substantial compliance with standardized

procedures. R.C. 4511.19; *see also State v. Lytle*, 9th Dist. Medina No. 04CA0016-M, 2004-Ohio-4964, at ¶ 5. The State can introduce the results of field sobriety tests if:

> [A] law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration [.]

*State v. Sunday*, 9th Dist. Summit No. 22917, 2006-Ohio-2984, ¶ 20-21, quoting R.C. 4511.19(D)(4)(b). Accordingly, the burden of establishing substantial compliance on the part of the administering officer is on the State, as part of its case in chief. *Id*. These testing standards include the NHTSA guidelines. *Id*.

### Administration of Field Sobriety Test

{¶25} Trooper Betzel administered three field sobriety tests to Mr. Bray. Mr. Bray only challenges the first scored portion of one of the three tests, the HGN test. According to the portion of the 2018 NHTSA manual admitted into evidence at the suppression hearing, the HGN test is composed of three different scored exams for clues of intoxication: (1) check for lack of smooth pursuit of the eyes; (2) check for distinct and sustained nystagmus at maximum deviation; and (3) check for onset of nystagmus prior to 45 degrees. For each section of the test, if the officer observes the clue he is looking for in an eye, the officer counts that as one point. The officer checks both eyes for the clues, making each exam worth a maximum of two points and the total test worth six points. Mr. Bray does not raise any challenges to the second or third portions of the test.

{¶26} Trooper Betzel testified that he observed the clues he was looking for in both eyes for both the second and third portions of the HGN test, in addition to the first portion of the test

that is the subject of Mr. Bray's challenge. Therefore, even if the "lack of smooth pursuit" portion of the test was disregarded, Trooper Betzel still would have observed four of six clues of intoxication, a score sufficient to indicate a suspect is likely impaired under the guidelines in the NHTSA manual. Mr. Bray points to no case law or portion of the NHTSA manual that would require this Court to disregard the second and third portions of the HGN test because the first portion of the test was performed incorrectly.

{¶27} Therefore, Mr. Bray's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT [ERRED] IN FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO ARREST [MR. BRAY].**

{¶28} In his fourth assignment of error, Mr. Bray argues that Trooper Betzel lacked probable cause to arrest him. This argument is based upon the assumption that the evidence obtained from the traffic stop would be suppressed. Those assignments of error are overruled, and for the reasons that follow below, we also overrule the fourth assignment of error.

{¶29} "[T]his Court reviews a probable cause determination de novo." *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 6, quoting *Sunday* at ¶ 28. Before an officer may effectuate a warrantless arrest, he must have probable cause that the suspect is engaging in criminal activity. *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11. An officer has probable cause to arrest a person for driving under the influence of alcohol "if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." *State v. Kurjian*, 9th Dist. Medina No. 06CA0010-M, 2006-Ohio-6669, ¶ 17, quoting *In re V.S.*, 9th Dist. Summit No. 22632, 2005-Ohio-6324, ¶ 13.

{¶30} The trial court found the following factors supported a finding of probable cause: (1) the stop occurred around 11:30 p.m. on a Thursday night; (2) Trooper Betzel stopped Mr. Bray for excessive speeding and Trooper Betzel testified in his experience excessive speed can be an indicator of impairment; (3) Mr. Bray's prolonged stopping of his vehicle after the activation of Trooper Betzel's overhead lights; (4) Mr. Bray's recent departure from a nearby establishment and Mr. Bray's admission he had consumed alcohol there; (5) Trooper Betzel's detection of a "moderate odor" of alcohol from Mr. Bray's breath; (6) Trooper Betzel's observation that Mr. Bray's eyes were bloodshot and glassy; and (7) Trooper Betzel's observation of a sufficient number of clues of impairment during his administration of three field sobriety tests (the HGN test, the walk-and-turn test, and the one-leg stand test) that indicated Mr. Bray was likely impaired.

{¶31} A review of the record indicates these facts are supported by the evidence presented at the suppression hearing. Based on the totality of the facts and circumstances available to him at the time of the arrest, we conclude Trooper Betzel had probable cause to arrest Mr. Bray. Mr. Bray has not established that Trooper Betzel lacked probable cause to arrest him. Mr. Bray's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT [ERRED] IN DENYING [MR. BRAY] A MOTION TO SUPPRESS HEARING REGARDING WHETHER THE BREATH TEST WAS ADMINISTERED IN SUBSTANTIAL COMPLIANCE WITH THE APPLICABLE REVISED CODE AND ADMINISTRATIVE CODE REGULATIONS AND IN FAILING TO ISSUE A RULING ON THE SUPPRESSION ISSUE.**

{¶32} In his fifth assignment of error, Mr. Bray argues the trial court erred in denying him a hearing on the suppression issue related to the breath test that was administered. We disagree.

**Procedural History**

{¶33} We begin our analysis with a review of the record and the procedural history of Mr. Bray's motion to suppress. In his motion to suppress, Mr. Bray argued six different categories of evidence he wished to be suppressed on eight different grounds. The trial court subsequently issued a judgment entry that identified four issues to be heard related to the motion. A "Pretrial Conference Report" docketed the same day had the four issues handwritten onto it. Broadly, the issues related to: (1) the continued detention of Mr. Bray; (2) probable cause for the arrest of Mr. Bray; (3) whether the field sobriety tests were administered with substantial compliance; and (4) multiple issues all related to the breath test. Mr. Bray identified his challenge to the breath test on the face of the Pretrial Conference Report. He also attached a second page to the report. This second page listed his specific challenges to the breath test.

{¶34} The trial court held a suppression hearing on the first three suppression issues. The following exchange occurred on the record regarding the manner in which the court would deal with Mr. Bray's motion to suppress:

| THE COURT: | Having conferred with the attorney for the parties, we've agreed to proceed as follows today. |
| --- | --- |
| | Of the several issues identified in that May 16, [2019] judgment entry, today we will consider the continued – the basis for the continued detention of the defendant; the performance of certain identified field sobriety tests, and whether there was probable cause for this arrest. |
| | The issues that were listed in that May 16th judgment entry relating to device calibrations, certifications for its operation, will be heard on a separate day, depending on the ruling on the first three issues that we considered today. |

* * *

[PROSECUTOR]:          Yes, Your Honor.

[DEFENSE COUNSEL]:     Yes, Your Honor.

The trial court subsequently denied Mr. Bray's motion on the first three issues. In that decision, the judge ordered the Clerk to set a hearing before the court to address the remaining issues involving the challenges to the breath test. The Clerk set that hearing for November 6, 2019 and notified the parties.

{¶35} The parties appeared and met at the court on November 6, 2019, for the hearing scheduled for the purpose of addressing the remaining breath test issues. A docket entry indicates that the pretrial was held without the judge. A Pretrial Conference Report signed by counsel for both the State of Ohio and Mr. Bray shows the parties appeared and met that day. The report contained a joint request that the case be set for trial. The parties checked a box indicating:

> The parties have concluded that no resolution before trial is or reasonably will be possible. The Clerk is requested to set the matter for trial.

Notably, unlike the previous Pretrial Conference Report, this report did not inform the trial court that there were any remaining outstanding issues. The box that had been checked and the lines where the previous suppression issues related to the breath test had been written were now empty. There was no indication from the Pretrial Conference Report, or anything filed with the form, that any breath test issues remained.

{¶36} The following day the Clerk set the case for trial as jointly requested by the parties. Later that month, Mr. Bray filed a demand for a jury trial, which the court granted the same day. There was no mention in that communication with the trial court, or in any subsequent filing in the record, that any outstanding suppression issues remained to be heard. The case was set for a jury trial, commencing on January 23, 2020. Over two months later, on January 13, 2020, Mr. Bray

filed a motion seeking a hearing on the suppression issues related to the breath test or a continuation of the trial.

{¶37} The trial court responded to Mr. Bray's motion two days later on January 15, 2020. In that judgment entry, the trial court stated "[Mr. Bray's] dilatory [January 13, 2020] request to conduct that review now is precluded by his waiver of [the] suppression issue [related to the breath test]." Further, the trial court wrote that "[n]othing in the record between [November 6, 2019] and [January 13, 2020] nudges this analysis towards a different conclusion" and that **"[n]o good cause is even proffered by [Mr. Bray] to relieve him from that waiver**." (Emphasis added.) The trial court found that by waiving further hearing on the issues through indicating that the case should be set for trial, Mr. Bray had constructively withdrawn his motion on the remaining suppression issues. The January 15, 2020 judgment entry is the basis for Mr. Bray's fifth assignment of error.

### Waiver

{¶38} "Waiver is the intentional relinquishment or abandonment of a right." *State v. Payne*, 114 Ohio St.3d 502, 2007–Ohio–4642, ¶ 23. Unlike forfeiture – which is the failure to preserve an objection – waiver extinguishes even claims of plain error under Crim.R. 52(B). *Id*. "Waiver is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn*., 97 Ohio St.3d 269, 2002-Ohio- 6322, ¶ 22. The facts and circumstances required to determine whether a right has been waived depends on the right at stake. *United States v. Olano*, 507 U.S. 725, 733 (1993).

{¶39} A defendant can waive his right to be heard on suppression issues by failing to timely assert a motion to suppress or by withdrawing a timely asserted motion. "By failing to file a motion to suppress illegally obtained evidence a defendant waives any objection to its admission. Obviously the same result occurs when a motion is filed but later withdrawn." (internal citations

omitted) *State v. Campbell*, 69 Ohio St.3d 38, 44 (1994). A motion to suppress can be withdrawn for any number of reasons as a matter of trial strategy. *See State v. Payne*, 9th Dist. Lorain No. 18CA011383, 2019-Ohio-4218, ¶ 25 (choice not to file motion to suppress constituted trial strategy). Defense counsel was not obligated to continue to pursue a motion to suppress, especially if defense counsel thought that motion was unlikely to succeed.

{¶40} Here, Mr. Bray knew he had a right to request the suppression of evidence. He exercised that right by filing a motion to suppress and participating in a hearing related to most of the issues raised in his motion. However, Mr. Bray waived that right for further hearing when he and the prosecutor filed the Pretrial Conference Report, did not indicate or inform the trial court of any remaining issues, and asked the case to be set for trial. Mr. Bray checked the box indicating the case was ready for trial and he requested the Clerk set the case for trial in January of 2020. Counsel for both parties signed and dated the Pretrial Conference Report. A second page outlining the specific breath test issues that were previously identified on the earlier Pretrial Conference Report was absent. Mr. Bray subsequently communicated with the trial court over the next two months and made no mention that any suppression issues remained until ten days before the trial was scheduled, at his request, to start. All of these facts point to a waiver that was made knowingly, intelligently, and voluntarily.

{¶41} Based on the right at stake in this case, Mr. Bray's appearance at the hearing scheduled to address the remaining portion of his motion and his subsequent failure to inform or alert the trial court that any portion of his motion remained, this Court concludes Mr. Bray waived this matter. Since Mr. Bray waived any right he had for further hearing on his motion, we cannot conclude that the trial court erred. Mr. Bray's fifth assignment of error is overruled.

## III.

**{¶42}** For these reasons, Mr. Bray's five assignments of error are overruled and the judgment of the Medina Municipal Court is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

PATRICK D. QUINN and RONALD A. ANNOTICO, Attorneys at Law, for Appellant.

J. MATTHEW LANIER, Prosecuting Attorney, for Appellee.